Criminal Case Template






COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



MOSES JIMENEZ,

                            Appellant,

v.

THE STATE OF TEXAS,

                            Appellee.

§

§

§

§

§

No. 08-05-00046-CR

Appeal from the

194th District Court

of Dallas County, Texas

(TC# F-0350636-HM)




O P I N I O N

            This is an appeal from a jury conviction for the offense of aggravated robbery. The jury
assessed punishment at life imprisonment in the Institutional Division of the Texas Department
of Criminal Justice. We affirm.
I. SUMMARY OF THE EVIDENCE
            Pedro Perez testified that he was a resident of Dallas, Texas. On February 28, 2003, he
left work at about 1:05 a.m. He stopped at the drive-through lane at an automatic teller machine
(ATM) at a Bank of America located in the Oak Cliff neighborhood situated at Beckley and 12th
Streets close by an Exxon gas station. He was attempting to withdraw ten dollars when he saw a
man with a gun in his hand running toward him. Perez abandoned the ten dollars and sped away. 
He heard the wielder of the gun say, “Give me your money.” The gunman fired some shots at the
departing vehicle. Perez testified that the rear window of his car was shattered by the gunfire. 
He received a wound in his back. After Perez left the ATM, he saw the shooter firing his gun on
a truck which had driven into the adjacent ATM lane. Perez stopped to call 911. The truck upon
which the shooter had fired stopped near Perez; the driver looked frightened. Perez went to the
parking lot of a nearby bank and awaited help.
            Perez stated that he got a good look at the assailant’s eyes, forehead, and face,
notwithstanding the fact that he had the hood of a sweatshirt around his head. He described the
individual as a stocky Hispanic male with a round face and moustache. Perez remembered his
eyes, his nose, and the shape of his face. He identified the Appellant in court as the individual
who attacked him the night at the ATM.
            Perez gave a description of his assailant to the police indicating that he was a Hispanic
male with a light moustache, heavyset or slightly stocky, wearing a white hooded sweatshirt and
baggie jeans. On April 11, 2003, Perez was shown a photographic lineup and he failed to
identify anyone. However, a week later he was shown a second lineup which included a picture
of Appellant and he made a positive identification of Appellant. Perez stated that he had no
doubt that Appellant was the individual who robbed and shot him at the ATM that evening.             Jose Centeno testified he was driving a 2001 gray Chevrolet pickup truck when he pulled
into the ATM lane at the time of the robbery involving Pedro Perez. He was about to withdraw
money from the ATM when he saw a man pointing a .45 caliber or nine-millimeter gun at him. 
The individual wore a white hooded jacket with the hood pulled around his head. Centeno was
able to see the gunman’s face from his eyebrows down to his chin. The area was well lighted. 
The assailant approached closer and shot at Centeno when he drove out of the ATM lane. The
gunman continued to fire as Centeno fled away from the scene.
            As he drove, Centeno came across the driver of the vehicle which had been at the ATM at
the time of the incident. The driver was making a call. Centeno made a 911 call and waited in a
bank parking lot while a shooting victim was being administered to. Officer Kenneth Blank
testified that on March 1, 2003, he answered a call regarding a 911 call at a bank parking lot. 
The rear window of Perez’s Dodge Stratus was damaged from a gunshot, and there was blood on
the driver’s seat. Four nine-millimeter cartridges were recovered from the parking lot where the
ATM robbery had occurred. An ATM receipt for ten dollars dated March 1, 2003, at 1:28 a.m.
was found in the ATM.
            Subsequent to the robbery, information was provided to the police regarding a mid-80’s
white Monte Carlo. About two weeks after the robbery, such a vehicle was involved in an
accident. An individual named Juan Lopez was the driver. Appellant was in the front passenger
seat. Luis and Jaime Ibarra were also in the vehicle. During a police search of the Monte Carlo,
two spent nine-millimeter shell casings were found and were retrieved as evidence. Appellant
was arrested on June 13, 2003.
            Kenneth Hawkins testified that he was a Dallas County Jail inmate. He shared a cell with
Appellant for two and one-half months. Appellant related to Hawkins on numerous instances
about a robbery that he had committed between March and May of 2003. Appellant related that
the robbery happened at an ATM in the Oak Cliff neighborhood. Appellant stated to Hawkins
that he shot at the victim’s vehicle, and destroyed the rear window. Appellant related that the
victim was shaking with fright as he left the ATM. Appellant related these events to Hawkins in
a boastful, excited manner. He stated that such a robbery was easy money. An individual named
Juan was with him and he had parked the car across the street at a gas station. Appellant stated
that he used a nine-millimeter handgun which the police had not found. He believed that
prevented the police from making the case.
            Hawkins also stated that Appellant had told him about a shooting incident which
happened at an Exxon gas station. Appellant was with an individual named Victor. Appellant
ran toward a truck and shot at it. Appellant thought that he had killed a Mexican man. Hawkins
overheard Appellant speaking to Victor over the phone about that incident. Also, Appellant
spoke over the phone from the jail trying to get his friends to get rid of the gun used at the ATM
robberies and the shooting at the Exxon gas station.
            Victor Ramirez testified concerning several offenses committed by Appellant
approximately thirty days after the robbery involving Pedro Perez. On the night of March 31,
2003, Ramirez was driving his tan Taurus; Appellant was in the car and he had a handgun. They
went to the Exxon gas station located near the ATM where Perez had previously been robbed. 
They saw a red truck at the station and it appeared to them that two individuals in the truck were
throwing gang signs at them. Appellant gave a gang sign signifying he was from the Oak Cliff
neighborhood. Appellant then got out of the car with the gun in hand and he fired the gun at the
truck. Ramirez and Appellant drove away. Police later found the red truck at the gas pump; the
shooting victim was dead inside of the truck.
            After stopping at a friend’s house, they went to an ATM on Westmoreland Street. They
drove into the bank parking lot of what was then called the Bank of the Southwest. They parked
outside the view of the bank’s cameras. Appellant got out of the car and crept up behind a white
compact car with several people inside. Ramirez heard gunfire and the compact car fled from the
ATM.
            Christina Hernandez testified that on March 31, 2003, at a bank located on Westmoreland
Street, at about 11 p.m., she and her brother and her four-year-old son stopped at the ATM. As
she waited for her cash, a brown car approached passing in front of her. When the money
appeared in the machine, she saw an individual wearing a black bandana over his face. Her
brother told her to leave and as she drove away from the ATM, she heard a loud noise as if
something hit her car. Upon arriving home, she found a bullet hole in the driver’s side rear
window.
            Carlos Hernandez, her brother, stated that the robber came to the ATM in a brown
Taurus. After he shot at them, he looked at the ATM for money. He stated that the robber was a
medium-sized Hispanic male in his twenties. Neither victim could identify the robber from a
photographic lineup. During the ensuing investigation, the police retrieved a nine-millimeter
cartridge from the ATM lane where the offense was committed.
            In light of the extraneous offenses admitted at trial, the jury charge at the guilt-innocence
stage of trial included a limiting instruction informing the jury that it could consider the evidence
only for the purpose of establishing the identity of the perpetrator in the indicted offense.
            A firearms examiner examined various nine-millimeter cartridges found at the scenes of
the ATM robberies involving Perez and the Hernandez family and the scene of the Exxon 
murder. Four cartridges found at the ATM robbery involving Pedro Perez were determined to
have been fired from the same weapon. Four cartridges collected from the scene of the Exxon
gas station murder were fired from the same weapon. All these cartridges including a nine-millimeter cartridge found at the scene of the Hernandez robbery, and two cartridge casings
which were collected from Lopez’s Monte Carlo, were determined to have been fired from the
same weapon. No weapon was introduced into evidence at trial.
            During the testimony of Detective Jesus Trevino, it was revealed that at 1:41 a.m. on
March 1, 2003, a 911 call was received regarding a shooting involving a victim, Marcus Patton. 
The shooting occurred about two and one-half miles from the Perez robbery. On cross-examination, Appellant’s counsel elicited further details of the Marcus Patton shooting in order
to show Juan Lopez’s responsibility for the incident. It was brought out that Juan Lopez was
driving away from the aggravated robbery at the ATM and he leaned out of the car and fired his
weapon upon a highway. Patton was driving on Interstate 35 and was killed.
II. DISCUSSION
            In Issue No. One, Appellant asserts that the court abused its discretion in admitting a
witness’s in-court identification as the identification was unreliable. Jose Centeno testified that
he was able to observe his assailant for eleven seconds. Centeno stated to the investigating
detective that he was 85 percent sure because he did not have the opportunity to observe the
gunman’s hair and his entire head. Both detectives who dealt with Centeno stated that they
considered his identification a strong, tentative identification.
            During a voir dire hearing regarding his identification, Centeno stated that the photos he
saw in the photographic lineup were not folded differently. Also, he had not noticed that the
photo he picked out had been signed and dated by another person. Centeno admitted that he had
failed to make an identification on prior occasions. The day prior to trial, during an identification
hearing, he related that he was nervous and afraid to testify because he feared retaliation. 
However, when looking at Appellant during trial, he believed the Appellant looked like the
robber who shot at him. Further, Centeno stated that five days after the offense, he said to a
detective that he did not want to become involved in the investigation of the offense. However,
Centeno maintained that while at the prior hearing, he had doubts about his identification; at trial,
he did not believe he had such doubts.
            If a court finds that a pretrial identification procedure was impermissibly suggestive, it
must then consider the factors enumerated in Neil v. Biggers to determine whether the suggestive
procedure gave rise to a substantial likelihood of irreparable misidentification. Neil v. Biggers,
409 U.S. 188, 199-200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972). These non-exclusive factors
are (1) the witness’s opportunity to view the criminal, (2) the witness’s degree of attention, (3)
the accuracy of the witness’s description of the suspect, (4) the level of certainty at the time of
confrontation, and (5) the time between the crime and confrontation. Id. at 199-200. These five
factors are treated as issues of fact and are viewed in the light most favorable to the trial court’s
ruling. Ibarra v. State, 11 S.W.3d 189, 195-96 (Tex.Crim.App. 1999). The five factors are then
reviewed de novo against “the corrupting effect” of the suggestive pretrial identification
procedure. Id.; Loserth v. State, 963 S.W.2d 770, 773-74 (Tex.Crim.App. 1998). Even if the
procedure was impermissibly suggestive, the in-court testimony of the identification witness is
still admissible as long as the record clearly reveals that the witness’s prior observation of the
accused was sufficient to serve as an independent origin for the in-court identification. Jackson
v. State, 657 S.W.2d 123, 130 (Tex.Crim.App. 1983). Also, inconsistencies in the witness’s
testimony go to the weight to be afforded the identification testimony and not to its admissibility. 
Garza v. State, 633 S.W.2d 508, 513 (Tex.Crim.App. 1982) (op. on reh’g).
            Appellant maintains that the in-court identification of Appellant by Centeno resulted from
procedures that were so suggestive that it produced a very substantial likelihood of irreparable
misidentification; therefore, the court should have suppressed the identification. Appellant
points to the failure of Centeno to identify Appellant in the photo lineup and during the
identification hearing. However, Centeno denied that the photo lineup pictures were folded
differently or that one of the photos was signed when he viewed the lineup. The court could have
readily determined that the pretrial identification procedures were not unduly suggestive. 
Further, while Centeno’s identification might be considered tentative, that identification went to
the weight to be given the identification rather than its admissibility. See Weatherred v. State, 35
S.W.3d 304, 313 (Tex.App.--Beaumont 2001, pet.ref’d). Issue No. One is overruled.
            In Issue No. Two, Appellant contends that the evidence was factually insufficient to
demonstrate identity. In conducting a factual sufficiency review, we view the evidence in a
neutral light to determine whether a jury was rationally justified in finding guilt beyond a
reasonable doubt. We set aside the fact finder’s verdict only if (1) the evidence supporting the
verdict, when considered by itself, is too weak to support the finding of guilt beyond a reasonable
doubt; or (2) evidence contrary to the verdict is strong enough that the
beyond-a-reasonable-doubt standard could not have been met. Zuniga v. State, 144 S.W.3d 477,
484-85 (Tex.Crim.App. 2004). However, our factual sufficiency review must be appropriately
deferential so as to avoid substituting our judgment for that of the fact finder. Clewis v. State,
922 S.W.2d 126, 133 (Tex.Crim.App. 1996). Accordingly, we are authorized to set aside the
jury’s finding of fact only in instances where it is manifestly unjust, shocks the conscience, or
clearly demonstrates bias. Id. at 135. If the evidence is factually insufficient, we remand to the
trial court for a new trial. Id. at 133-35.
            Appellant maintains that the evidence is factually insufficient regarding identity because
Jose Centeno was not able to positively identify Appellant until after several attempts. Further,
Appellant argues that Pedro Perez’s identification was inadequate in that he was five feet away
from Appellant and he could not recall the color of Appellant’s eyes. Appellant also asserts that
Perez’s and Centeno’s identifications were inadequate because they were shown the
photographic lineups a month and a half after the offense. Appellant also contends that the
testimony of Kenneth Hawkins was suspect because Hawkins had a criminal matter pending
against him.
            However, we find that there is abundant evidence to provide the identification in the case. 
Contrary to Appellant’s contentions, Pedro Perez’s identification was unscathed in that it was
positive and he had ample opportunity to observe Appellant during the robbery. Appellant is
further connected circumstantially to the offense by the testimony of Jose Centeno as well as by
the extraneous offenses that were admitted to prove identity. We find that this is not an instance
where the evidence is factually insufficient as to be manifestly unjust, shocking the conscience,
or clearly demonstrating bias. Accordingly, Issue No. Two is overruled.
            In Issue Nos. Three and Four, Appellant argues that the court abused its discretion by
admitting extraneous offense evidence of an aggravated robbery at an ATM, and by admitting
extraneous conduct evidence of a shooting. Texas Rule of Evidence 404(b) prohibits the
introduction of extraneous bad acts to show character conformity but provides that such evidence
may be admissible to show “motive, opportunity, intent, preparation, plan, knowledge, identity,
or absence of mistake or accident, . . . .” Tex.R.Evid. 404(b); Page v. State, 137 S.W.3d 75, 78
n.9 (Tex.Crim.App. 2004). An extraneous offense may be admissible to show identity only when
identity is an issue in the case. Lane v. State, 933 S.W.2d 504, 519 (Tex.Crim.App. 1996). 
Cross-examination of State’s witnesses can raise the issue of identity, such as when the
identifying witness is impeached on a material detail of the identification or about the conditions
surrounding the offense charged and the witness’s identification of the defendant in that
situation. Siqueiros v. State, 685 S.W.2d 68, 71 (Tex.Crim.App. 1985). A material detail is one
that is “relevant to the reliability of the identification.” Page, 137 S.W.3d at 79. That the
impeachment was not particularly damaging or effective in light of all the evidence presented is
not the question; the question is simply whether impeachment occurred that raised the issue of
identity. Id.
            We review a trial court’s decision to admit evidence under Rule 404(b) under an abuse of
discretion standard. Prible v. State, 175 S.W.3d 724, 732 (Tex.Crim.App. 2005). A trial court
abuses its discretion when its decision is so clearly wrong as to lie outside the zone within which
reasonable persons might disagree. McDonald v. State, 179 S.W.3d 571, 576 (Tex.Crim.App.
2005).
            In the present case, Appellant concedes that identity was placed in issue through the
cross-examination of witnesses regarding whether they could positively identify Appellant. 
However, Appellant asserts that there were no connective similarities between the indicted
offense and the extraneous offenses. Specifically, Appellant claims that the extraneous ATM
offense was not sufficiently similar to the indicted ATM offense because they occurred at
different banks and the headgear worn by the individual in each case differed because in one
instance a hood was worn, and in the other instance a bandana was worn. Further, Appellant also
argues that the victims of the extraneous ATM offense could not identify Appellant from a
photographic lineup. Appellant also maintains that the shooting incident was not similar in that
shots were fired at a rival gang, a fact not associated with the indicted aggravated robbery of
Pedro Perez.
            In order to use an extraneous offense to demonstrate identity, the extraneous offense must
be so nearly identical in method to the charged offense that the offenses are marked as the
defendant’s “handiwork.” Lane, 933 S.W.2d at 519; Johnson v. State, 68 S.W.3d 644, 650-51
(Tex.Crim.App. 2002). In other words, the defendant’s “signature” must be apparent from a
comparison of the circumstances in the cases. Bishop v. State, 869 S.W.2d 342, 346
(Tex.Crim.App. 1993) (the characteristics must be so unusual and distinctive that they are like a
signature). To obtain admission of the extraneous offense evidence, the State must show more
than merely the repeated commission of the same type or nature of criminal offense. Owens v.
State, 827 S.W.2d 911, 915 (Tex.Crim.App. 1992).
            In determining whether the similarity between the offenses is sufficient, the court should
consider both the specific characteristics of the offenses and the time interval between them. 
Johnson, 68 S.W.3d at 651. Sufficient similarity between the offenses may be shown by
proximity in time and place, or by a common mode of committing the offenses, i.e., a common
modus operandi. Lane, 933 S.W.2d at 519, citing Ransom v. State, 503 S.W.2d 810, 813
(Tex.Crim.App. 1974). Remoteness or dissimilarity does not per se render an extraneous offense
irrelevant on the issue of identity. Thomas v. State, 126 S.W.3d 138, 144 (Tex.App.--Houston
[1st Dist.] 2003, pet ref’d) (factors of remoteness and similarity are important, not in and of
themselves, but only as they bear on relevancy and probative value of the extraneous offense
evidence). The extraneous offenses and the charged offense may be different offenses as long as
the similarities between them are sufficient to make the evidence relevant on the issue of identity. 
Id.; Linder v. State, 828 S.W.2d 290, 297 (Tex.App.--Houston [1st Dist.] 1992, pet. ref’d).
            Regarding the ATM extraneous offense, we find that there were sufficient similarities to
support its admission into evidence. Both offenses were aggravated robberies occurring in the
same general neighborhood in the dark. In each instance, the robber used the same nine-
millimeter gun. The victims in each instance fled the scene and the shooter fired after them.
Furthermore, Victor Ramirez placed Appellant at the scene of the robbery on Westmoreland
Street. The near month between the indicted robbery and the extraneous offense robbery was
within the bounds of a signature offense. See Crawford v. State, 770 S.W.2d 51, 52-53
(Tex.App.--Texarkana 1989, no pet.).
            Concerning the shooting extraneous offense, we have two different types of offenses. 
However, we need not determine whether admission of the shooting extraneous offense evidence
was an abuse of discretion because we conclude that any error was harmless. The erroneous
admission of extraneous offense evidence does not constitute constitutional error; therefore, we
must disregard the error if it did not affect Appellant’s substantial rights. Tex.R.App. P. 44.2(b);
Avila v. State, 18 S.W.3d 736, 741-42 (Tex.App.--San Antonio 2000, no pet.). In other words,
we disregard any such error if it did not adversely affect, or had only a slight effect on, the jury’s
verdict. Id. at 742; King v. State, 953 S.W.2d 266, 271 (Tex.Crim.App. 1997). Here, the
incriminating evidence was substantial. Pedro Perez made a positive identification of Appellant
and Kenneth Hawkins also implicated Appellant. It is a fair conclusion that Appellant was in the
Monte Carlo when Lopez fired on the Interstate; apparently involved in a night-long crime spree. 
Considering the entire record, we hold the shooting extraneous evidence would have had only a
slight effect on the jury’s verdict, if any; thus, any error in admission of that evidence is
harmless. Issue Nos. Three and Four are overruled.
            In Issue No. Five, Appellant argues that the trial court erred by denying his motion for
mistrial due to a witness testifying that Appellant had another offense. During the testimony of
Kenneth Hawkins, the following exchange occurred.
            THE COURT:We’re not trying this case twice. Ms. Hallman [the prosecutor] is
an officer of the court. She has just said that she is not going into
extraneous offenses with this witness. Once again, I’m taking her
at her word. Mr. Hawkins, you are instructed to listen to the
question carefully, answer only the question. Do not volunteer any
additional information. You are to only go into this particular
offense. Do you understand?
 
WITNESS:Yes, ma’am.
 
Later during Hawkins’s testimony, the following exchange occurred:
 
STATE:Mr. Hawkins, when the defendant was telling you about
robbing at an ATM because it was easy money and
shooting out the back window of a guy’s car, did he say this
is what I’m accused of?
 
WITNESS:No, ma’am. He said that’s one of the crimes he committed.
 
STATE:Did he say ‘I did this’?
 
WITNESS:Yes.
 
STATE:So when he was talking about it, it wasn’t phrased as this is
what they’re trying to put on me?
 
WITNESS:No.
 
STATE:How was the way that he was telling you about that
aggravated robbery?
 
WITNESS:I don’t know if I’m allowed to say that, because it involves
another case.
 
DEFENSE:Judge, I’m going to object to this witness violating the rule.
 
COURT:Mr. Hawkins, please remember.
 
DEFENSE:Okay.
 
COURT:I’m instructing counsel, also. You-all must abide by it, too. 
So with your questions, you must also not open the door. 
So, Mr. Hawkins, if you can answer it, then please answer
it. But it must be answered within what I instructed you. If
you cannot answer it within that, then tell them.
 
DEFENSE:Your Honor, I ask that the jury be instructed to disregard
that comment by this witness.
 
COURT:The jury will be so instructed.
 
DEFENSE:And the Defense moves for a mistrial.
 
COURT:Overruled.

            We review a trial court’s denial of a motion for mistrial under an abuse of discretion
standard. Ladd v. State, 3 S.W.3d 547, 567 (Tex.Crim.App. 1999). Mistrial is a device used to
halt trial proceedings when the error is so prejudicial that expenditure of further time and
expense would be wasteful and futile. Id. To determine whether a given error necessitates a
mistrial, we must examine the particular facts of the case. Id. Ordinarily, a prompt instruction to
disregard will cure the prejudicial effect of an improper question and answer, including those
regarding extraneous offenses. Ovalle v. State, 13 S.W.3d 774, 783 (Tex.Crim.App. 2000);
Kemp v. State, 846 S.W.2d 289, 308 (Tex.Crim.App. 1992). A mistrial is required only when the
impropriety is clearly calculated to inflame the minds of the jury and is of such a character as to
suggest the impossibility of withdrawing the impression produced on the minds of the jury. 
Hinojosa v. State, 4 S.W.3d 240, 253 (Tex.Crim.App. 1999).
            In this instance, the court did not abuse its discretion in overruling Appellant’s motion for
mistrial. There was just one mention of the other case and we note that Jose Centeno had already
testified about the robbery where he was the victim. The jury could easily have inferred that the
reference was to that robbery. Issue No. Five is overruled.
            Having overruled each of Appellant’s issues on review, we affirm the judgment of the
trial court.
                                                                        DAVID WELLINGTON CHEW, Chief Justice

October 26, 2006

Before Barajas, C.J., McClure, and Chew, JJ.
Barajas, C.J., not participating

(Do Not Publish)