**Robert Earl RANSOM, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 47054.**

Court of Criminal Appeals of Texas.

Jan. 16, 1974.

Rehearing Denied Feb. 6, 1974.

Charles Giddens (counsel on appeal only) Dallas, for appellant.

Henry Wade, Dist. Atty., and W. T. Westmoreland, Jr., Asst. Dist. Atty., Dallas, Jim D. Vollers, State's Atty., and Buddy Stevens, Asst. State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This appeal is taken from a conviction for robbery by assault. The punishment was assessed at life.

Appellant's sole contention on appeal is that the trial court erred in admitting evidence of an extraneous offense.

Prior to trial appellant's counsel, obviously aware of the extraneous offense and the possibility of its admission into evidence, filed a motion in limine to instruct the prosecution not to offer evidence of extraneous offenses until such time as the court had been notified of the State's intention and had determined the admissibility of such evidence. Said motion was granted by the court.

Roy J. Hayden testified that he left the Satellite Club in Dallas at approximately 11:30 p.m. on January 28, 1972. As he got to his car on the parking lot, the appellant approached him and asked if he would take the appellant and his wife home. Hayden refused. Appellant then offered to pay and Hayden consented. Appellant called to a woman and the two got in Hayden's car and directed Hayden to a house on Frank Street. After the vehicle stopped, the appellant said, "Let me pay you" and produced an automatic pistol and stated he meant "business." After Hayden got out of the car, the appellant searched him taking his wallet containing $6.00, a watch, credit cards and personal papers. The car trunk was opened and searched and the appellant's woman companion searched the glove compartment and took some cigarettes.

The complaining witness was the only witness to identify the appellant. On cross-examination appellant's counsel attempted to show that the witness had never before seen the man who approached him on the parking lot of the Satellite Club and asked for a ride home, established that there were no parking lot lights and that the light in the 3500 block of Frank Street where the robbery subsequently occurred was poor, and that the witness' best observations occurred when the robber got in and out of the car and the dome light was on. Counsel also developed before the jury that the witness had been shown photographs by the police and attempted to imply suggestiveness on the part of the police in securing the witness' identification of the appellant.

After the State rested its case in chief, the appellant offered a number of alibi witnesses who swore the appellant, driving his own Oldsmobile, left Dallas with others for Forreston on the Friday evening of January 28, 1972, prior to the time of the

robbery and did not return to Dallas until the following Sunday. Appellant's sister, Patricia Ann Ransom, in addition to supporting the alibi testimony, testified on redirect examination that on Tuesday, January 25, 1972, she, the appellant and others had gone to visit a relative in the county jail. The State objected to such testimony on the ground the appellant was impeaching his own witness since she had earlier testified the appellant worked every day that week except for half a day on Friday, January 28. The objection was overruled and the witness, contradicting her earlier testimony, related appellant had not worked on Tuesday, January 25, but had gone to the county jail instead.

Thereafter, much of the defense testimony elicited concerned the events of January 25, it being established that while appellant and his family were at the county jail from 11 a.m. to about 4 p.m., his automobile, an Oldsmobile, was stolen and that it was later learned it was at the police pound, the vehicle having been used in a robbery.

In rebuttal, over objection, the State called James Daniels, who testified that about 12:30 p.m. on Tuesday, January 25, he was robbed at gunpoint in his tire shop in Dallas by appellant and another man who fled in an Oldsmobile. He gave chase and gave signal to a policeman. Officer Maselli testified he pursued the Oldsmobile only to find it abandoned a few blocks away.

The strategy of appellant's counsel in injecting the events of January 25th is not clear, but it appears to have been done to lessen the impact of the anticipated introduction of the extraneous offense by attempting to show the automobile used in the extraneous offense was stolen from the appellant and perhaps to strengthen his alibi testimony by showing that appellant frequently went to various places together with other members of his family.

The court gave a limiting instruction at the guilt stage of the trial limiting the use of testimony regarding the extraneous offense to the issues of identity and intent. There were no objections to such charge or any special requested issues.

■ Putting aside and not determining the question of whether the cross-examination of the complaining witness was such as to authorize the admission of the extraneous offense [1], it is clear the extraneous offense was admissible on the issue of identity and as it tended to defeat or discredit the defensive theory of alibi.

First, the complaining witness was the sole witness to place the appellant at the scene of the alleged robbery. To counter this the appellant offered numerous alibi witnesses whose testimony placed him miles away at the time. The issue of identity was thus hotly disputed and clearly raised.

■ This court has had occasion in the past to note that evidence of an extraneous offense is admissible to prove identity, when identity is an issue, only if there is some distinguishing characteristic common to both the extraneous offense and the offense for which the accused is on trial. See Ford v. State, 484 S.W.2d 727, 729 (Tex.Cr.App.1972).

" . . . That is, if it is established that the accused committed an extraneous offense, and that there is some distinguishing *characteristic* common both to it and the offense for which the accused is on trial, then an inference may be drawn that the accused was the person who committed the primary offense. . . ." (emphasis supplied)

1. In Albrecht v. State, 486 S.W.2d 97, 102 (Tex.Cr.App.1972), it was pointed out that evidence of extraneous offenses may become admissible where the effectiveness of the State's evidence, though uncontradicted by other evidence, is completely undermined by defense cross-examination. See and compare Caldwell v. State, 477 S.W.2d 877 (Tex.Cr.App.1972), where it was pointed out that the fact that an accused cross-examines does not, standing alone, authorize the introduction of an extraneous offense.

In the instant case both offenses were robberies committed at gunpoint in Dallas three days apart, while appellant, identified as the perpetrator of both, was aided by a confederate. In Ford v. State, supra, it was pointed out the common distinguishing characteristic may be the proximity in time and place *or* the common mode of the commission of the offenses. It would appear that both are present here.

Surely it can be argued that in the primary offense appellant's confederate was a woman and in the extraneous offense the confederate was a man. The important thing here is that he acted in both instances with a confederate, even though it was not the same confederate. Suppose the confederate in each case had been a man, but obviously different men. Would this make a difference as to admissibility of the extraneous offense? We think not.

Further, it surely cannot be logically argued that if the primary offense shows a robbery at gunpoint on a residential street after the accused, acting with a woman confederate, asked the victim to take him home, a series of armed robberies in the same county committed by the accused, acting with a man confederate, at various retail stores, nightclubs, etc., within a short time span, are inadmissible because the *exact* modus operandi of the primary offense was not repeated.

It could be argued that at the time of the primary offense the appellant was shown to have been wearing a broad brimmed hat, while at the time of the extraneous offense he was described as wearing a steel helmet. While mode of dress, hair style, facial hair, etc., may play an important part from time to time in determining the admissibility of extraneous offenses, we feel it has been given far too important a role in recent decisions of this court based in part on some of the language in Ford v. State, supra. See, e.g., Cobb v. State, 503 S.W.2d 249 (Tex.Cr. App., 1973).[2] Some of the reasoning in these cases apparently overlooks the well established requirement that before any extraneous offense is admissible the offenses must be clearly proven and the accused shown to have been its perpetrator. See 23 Tex.Jur.2d, Evidence, Sec. 195, p. 300.

If the accused is clearly identified and shown to be the perpetrator of the extraneous offense, the mere fact that he was wearing a green sweater and blue jeans and a mustache during the primary offense and a red sweater and black slacks and had no mustache during the subsequent extraneous offense cannot be all that important standing alone.

A few illustrations may better demonstrate the point.

Suppose X is charged with the offense of indecently fondling a young boy and the proof shows that while dressed in a maroon suit with matching tie and hat, wearing a mustache with his hair shoulder length, he enticed the complaining witness and his young companion into a restroom on a public park ground by offering them pieces of chocolate candy bars. Suppose the issue of identity is properly raised authorizing the introduction of extraneous offenses on that issue.

Suppose further that one of the extraneous offenses shows that one week after the instant offense X committed the act of indecently fondling a young neighbor boy whom he enticed into his bedroom by showing the child comic books, and at the time X wore no clothes, had shaved his mustache and had his hair cut so it resembled a "crew cut."

Suppose the other extraneous offense showed that one week prior to the primary offense, while wearing a lavender suit and tie and dark purple hat, X, with long hair and mustache, together with another man, B, enticed two young boys into a car near a school with offers of showing them some tricks and by giving them dimes and X and B indecently fondled them.

2. Judge Douglas and this writer concurred in Cobb for this very reason.

Do the two extraneous offenses have a distinguishing characteristic common to the primary offense?

In the first extraneous offense X was not dressed as he was at the time of the instant offense, in fact he was not dressed at all, he was not in a public park or place, but in his own home, his hair style was different, and the method of enticement was not the same. In the second extraneous offense X was with another man, dressed in a lavender rather than a maroon suit, and this time in a car rather than in a public park and again used a different method of enticement.

Can it be said that for the foregoing reasons the extraneous offenses were inadmissible? We would think not.

In each of the extraneous offenses X was clearly shown to be the perpetrator of the extraneous offense, and in each instance he lured young boys by some method of enticement into a place where the act of fondling could take place. These common distinguishing characteristics are the essential ones which bear on the issue for which they were admitted.

The fact that the method of enticement was comic books or money and tricks as opposed to chocolate candy, or the fact that the appellant was dressed in a maroon or lavender suit or not at all, or was with another man, or whether the skies were cloudy or bright are not the essential distinguishing characteristics where the other factors discussed in the foregoing paragraph are present.

So much for illustrations, for it is clear that the extraneous offense introduced in the instant case was clearly admissible on the issue of identity.

■ While not necessary to the proper disposition of appellant's sole contention, it would appear that the extraneous offense was admissible as it tended to defeat or discredit the defensive theory of alibi, although the extraneous offense on January 25th did not directly contradict or refute the alibi evidence as to appellant's whereabouts on January 28th. Owens v. State, 450 S.W.2d 324, 326 (Tex.Cr.App.1969); Thompson v. State, 170 Tex.Cr.R. 258, 339 S.W.2d 209 (1960). And this is particularly true in the instant case where the appellant first voluntarily injected into the case the fact that appellant was with the same group of people on January 25th as he claimed he was with on January 28th.

Appellant's ground of error is overruled.

The judgment is affirmed.

MORRISON, Judge (concurring).

I join in the affirmance of this conviction. When appellant gratuitously offered proof as to where he was and what he was doing on January 25, the State was then clearly authorized to prove that this gratuitous alibi was false in order that the jury might properly pass upon the validity of the primary alibi which he had offered for January 28.

I concur.

ROBERTS, Judge (dissenting):

The majority members of this Court have now effectively emasculated the previous decisions of Ford v. State, 484 S.W. 2d 727. (Tex.Crim.App.1972) and Newman v. State, 485 S.W.2d 576 (Tex.Crim.App. 1972). For some unexplained reason, what was good in 1972 is not good in 1974—that is, the judges who make up this Court today are the very same ones who voted on Ford and Newman, in which there were *no* dissenting or concurring opinions filed by my brothers on the Court. Attorneys in this State, prosecutors and defense counsel alike are now put on notice that the field of extraneous offenses is now wide open territory once again. The case law in this State regarding the admissibility of extraneous offenses has long been a jumbled mess, totally lacking in consistency and predictability. To any extent that the Ford and Newman cases may have been a step in the right direction for establishing

some logical rules which attorneys might follow, those decisions have now been rendered ineffective.

The majority decide today that common characteristics are not really that important after all, if the perpetrator of the extraneous offense is identified as the person accused of the primary offense. Doesn't that completely open the door for a flood of extraneous offenses, thereby defeating the very purpose behind the restrictions in the first place, i. e., that an accused should be tried only for the crime presently charged and not for being a criminal generally? The majority seem to ignore the fact that extraneous offenses have traditionally been admitted as *exceptions* to this rule, to show common scheme, design, intent, etc., or to rebut alibi. Apparently, the new rule is that the exclusion of these extraneous offenses will be the exception. The majority state that in the present case, both offenses were robberies committed at gunpoint in Dallas, with appellant acting with a companion (though in one case, appellant was acting with the aid of a woman and the other time, a man). The Court finds this sufficient to show a "common mode of the commission of the offenses." I quote from Ford v. State, which has been good authority up until now:

> "We recognize that there will always be similarities in the commission of the same type of crime. That is, any case of robbery by firearms is quite likely to have been committed in much the same way as any other. What must be shown to make the evidence of the extraneous crime admissible is something that sets it apart from its class or type of crime in general, and marks it distinctively in the same manner as the principal crime. (citations omitted)"

As in Ford, the present case has similarities, "but they are more in the nature of the similarities *common to the type of crime itself rather than similarities peculiar to both offenses alone.*" Ford, supra, 484 S.W.2d at p. 730.

The majority go further; their holding strengthens a case which contains language that should never have gone into the law books of this State in the first place. I refer to the case of Owens v. State, 450 S. W.2d 324 (Tex.Crim.App.1969), cited by the majority and decided before I was elected to this Court. In citing this case, the majority approve of the overly-broad language contained therein, specifically where it speaks of allowing the introduction of extraneous offenses which "tend" to defeat or discredit the accused's defensive theory. How could an attorney possibly take this language and speculate with even the slightest degree of accuracy the chances of admitting or keeping out an extraneous offense? Clearly, Owens reached the right result for the wrong reasons. There, the accused was charged with robbing a Pilgrim's Cleaners on October 14, 1967. The defendant raised the defense of alibi and vigorously contested the issue of identification. The State then offered five witnesses who testified that during this same month, while each was alone in a branch of a Pilgrim's Cleaners, they were robbed in the same manner as was used in the primary offense. Judge Onion stated that:

> "While such testimony may not have directly contradicted the alibi evidence as to appellant's whereabouts on October 14, 1967, it *tended to defeat or discredit* such defensive theory and was admissible." (Emphasis added)

In light of the similarity of the offenses involved and the contested issue of *identity*, it was completely unnecessary to decide the admissibility of the extraneous offenses on the basis that they "tended" to discredit the defendant's defensive theory of alibi.

The majority certainly do nothing to clear the air on when extraneous offenses are admissible to rebut an alibi. Under Ford, evidence to rebut an alibi was held to be admissible if it placed the accused at a place where he claimed not to be, or if the evidence showed the impossibility of

the alibi, even if the two offenses were dissimilar. Whether or not that remains the law is unanswered.

I dissent.

ODOM, J., joins in this dissent.