**George Washington SHARPER,**
**Appellant**

**v.**

**The STATE of Texas, Appellee**

**No. 06–15–00114–CR**

Court of Appeals of Texas,
Texarkana.

Submitted: December 28, 2015

Decided: February 4, 2016

Katherine A. Ferguson, Renshaw, Davis & Ferguson, LLP, Greenville, TX, for appellant

G. Calvin Grogan, Assistant District Attorney, Noble D. Walker, Jr., Hunt County District Attorney, Greenville, TX, for appellee

Before Morriss, C.J., Moseley and Burgess, JJ.

## OPINION

Opinion by Justice Moseley

After a Hunt County jury found George Washington Sharper guilty of the capital murder of David Olivares, the trial court sentenced him to the mandatory punishment of life imprisonment without parole.[1] Sharper appealed to this Court, asserting that the trial court erred (1) in admitting the out-of-court statement of his alleged accomplice in violation of his right to confront and cross-examine witnesses under the Sixth Amendment and (2) in admitting extraneous-offense evidence in the guilt/innocence phase of the trial. We find that (1) Sharper failed to preserve his claimed Sixth Amendment error and (2) the trial court did not abuse its discretion in admitting evidence of the extraneous offense. Therefore, we affirm the judgment of the trial court.

### I. Sharper's Claimed Error Under the Sixth Amendment Was Not Preserved

In his first point of error, Sharper argues that the trial court's admission of a redacted, partial transcript of an interview of his alleged accomplice violated his right to confront and cross-examine witnesses guaranteed under the Sixth Amendment.[2]

---

1. *See* TEX. PENAL CODE ANN. §§ 12.31(a)(2), 19.03(a)(2), (b) (West Supp.2015).

2. Although the alleged accomplice was present at trial and subject to cross-examination, Sharper maintains that the witness' attempted invocation of his right against self-incrimination effectively made him unavailable. Since we find Sharper has failed to preserve this

*See* U.S. CONST. amend. VI. He argues that he preserved this error by objecting to the admission of the statement when first proposed by the State. The State argues that Sharper waived any error by failing to object to the admission of the redacted statement when offered.

 "Preservation of error is a systemic requirement on appeal." *Ford v. State*, 305 S.W.3d 530, 532 (Tex.Crim.App. 2009) (citing *Haley v. State*, 173 S.W.3d 510, 515 (Tex.Crim.App.2005)). We review preservation of error because we should not address the merits of an issue if it is not preserved. *Id.* at 532–33. "To preserve a complaint for our review, a party must first present to the trial court a timely request, objection, or motion stating the specific grounds for the desired ruling if not apparent from the context." *Lee v. State*, No. 06-15-00004-CR, 2015 WL 5120243, at *1 (Tex.App.–Texarkana Sept. 1, 2015, no pet.) (citing TEX. R. APP. P. 33.1(a)(1)). "Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule." *West v. State*, 121 S.W.3d 95, 114 (Tex.App.– Fort Worth 2003, pet. ref'd) (citing TEX. R. APP. P. 33.1(a)(2)). If, after the trial court has made a preliminary ruling on the objection, the objecting party later affirmatively states that it has no objection to the admission of the evidence, he may waive his previously preserved error. *Thomas v.*

*State*, 408 S.W.3d 877, 885–86 (Tex.Crim. App.2013); *Estrada v. State*, 313 S.W.3d 274, 302 (Tex.Crim.App.2010); *Harper v. State*, 443 S.W.3d 496, 498 (Tex.App.–Texarkana 2014, pet. ref'd). In order to assess whether a waiver of previously preserved error has occurred, we

> should first ask whether "the record as a whole plainly demonstrates that the defendant did not intend, nor did the trial court construe, his 'no objection' statement to constitute an abandonment of a claim of error that he had earlier preserved for appeal." *Thomas*, 408 S.W.3d at 885. If, even after reviewing the whole record, it remains ambiguous whether waiver was intended, the court should resolve the ambiguity in favor of a finding of waiver. *Id.*

*Stairhime v. State*, 463 S.W.3d 902, 906 (Tex.Crim.App.2015). Even a defendant's right to confrontation and cross-examination may be lost if not properly preserved. *See Melendez–Diaz v. Massachusetts*, 557 U.S. 305, 314 n. 3, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009); *Holland v. State*, 802 S.W.2d 696, 700 (Tex.Crim.App.1991).[3]

 The record in this case shows that the alleged accomplice, Markus Stephenson, attempted to assert his Fifth Amendment right against self-incrimination.[4] After the trial court ordered Stephenson to answer those questions that did not place him in jeopardy, he consistently answered that he did not remember being inter-

---

error, we do not reach the merits of this argument.

**3.** The issue of the potential of an unintended waiver when uttering "no objection" should not be confused here. Although it is possible to waive objections by use of that phrase, the scope of its use depends on whether it is plain from the record that the trial court is made aware of the intention of the litigant when it is said. *Thomas*, 408 S.W.3d at 884. Here, Sharper objected to the introduction of a par-

ticular interview. After it was redacted, he said that he had no objection to its introduction. As we explain hereafter, "the record in this case fails to demonstrate that Sharper did not intend his 'no objection' statement to be a waiver or that the trial court construed it in that manner."

**4.** Stephenson had previously been convicted of the murder of Olivares and was serving a sixty-year prison sentence at the time of the trial in this case.

viewed and answering questions regarding his and Sharper's involvement in the murder of Olivares. The State then proposed to refresh Stephenson's memory with the audio recording of the interview and offer the transcript of the interview into evidence. Sharper asserted a number of objections, including his right to confront and cross-examine the witness. After the recording was played outside the presence of the jury, the parties made additional arguments, and the trial court told the parties that he would review their cases and rule the following morning.

Although the record does not show an explicit ruling by the trial court, when the hearing is resumed the next morning, the State informs the trial court that it is making redactions to the transcript of the interview, "based on the court's ruling," which it will then give to Sharper to review and "see if we can agree to it." After the redacted transcript was given to Sharper, he made three specific objections to various phrases or words that remained in the transcript, and the State agreed to remove each of them. Sharper then voiced concerns about the appearance of the redacted transcript and the danger of the jury speculating what might be in the redacted portions, and the trial court assured him he would give instructions to the jury. After the direct and cross-examination of Stephenson, the State called Detective Warren Mitchell, who conducted the interview with Stephenson. During Mitchell's examination, the State offered the redacted transcript into evidence. The trial court then asked if there were any objections, to which Sharper's counsel answered, "No, Your Honor." After admitting the redacted transcript,[5] the trial court made the following explanation to the jury:

THE COURT: Let me explain something to the jury on this transcript you're getting. There's a lot of redacted information. The information that's on there is what I've ruled that you—it's proper evidence for you to consider. You're not to concern yourself with what may or may not have been redacted.

Sharper never informed the trial court that his acquiescence to the admission of the redacted transcript was subject to his Sixth Amendments objections, nor does the record indicate that the trial court understood these objections to be preserved when he affirmatively asserted that he had no objection to its admission. Further, in Sharper's closing argument he attacks Stephenson's motivation for giving the statements contained in the redacted transcript, explaining to the jury that Stephenson's original capital murder charge was dropped to murder after he implicated Sharper. This argument supports the conclusion that Sharper strategically abandoned his Sixth Amendment objections in favor of attacking Stephenson's credibility. Since the record does not plainly demonstrate that Sharper did not intend to abandon his Sixth Amendment objections, we find that Sharper has failed to preserve this error for our review. *See Harper*, 443 S.W.3d at 499.

## II. Admitting Extraneous Offense Evidence Was Not an Abuse of Discretion

### A. Background

Sharper's next point of error concerns certain testimony given by his mother-in-law, Carla Thornton. Before Thornton's testimony, the trial court held a hearing

---

5. The redacted transcript contains parts from six pages. In it, Stephenson places Sharper with him at the Olivares house and affirms that their intention in going to the house was "to be a lick," that is, they went to the house to rob them.

outside the presence of the jury and heard Thornton's proposed testimony. After hearing the testimony and arguments of counsel, the trial court held that her testimony was admissible under Rule 404(b)(2) of the Texas Rules of Evidence for the purpose of proving identity, intent, motive, and rebuttal of a defensive theory and that its probative value outweighed any unfair prejudice. *See* TEX. R. EVID. 403, 404(b)(2).

Thornton testified that in 2007, she was living on East Hill in Greenville with her children, her husband, Sharper, and Stephenson. According to Thornton, on the night of Olivares' murder, June 29, 2007,[6] she and her husband were in their living room when Sharper and Stephenson burst through the door with their shirts off and ran down the hall. She followed them and asked what was going on, and they said that they had just killed a guy. Thornton said that Sharper had a gun. She also testified that they told her that they had done it because they needed money. Thornton stated that she did not go to the authorities with this information at the time because her daughter, Courtney, was pregnant with Sharper's child. Thornton first told Mitchell and Detective Jason Smith about this event while she was in jail in Fannin County on a conspiracy charge in September 2011.

Thornton also testified that she told Mitchell and Smith where they could find the murder weapon. She explained that Sharper and Stephenson had told her about another robbery in which they used the same weapon. She said that they told her they had robbed a man named "Boo" in Commerce and that the police had pulled their car over before they got away.

Thornton testified that Sharper told her he had used the same gun in both incidents.

In addition to Thornton's testimony, Officer William Ball of the Commerce Police Department testified that around midnight on July 23, 2007, he responded to a call for backup on a felony burglary or robbery stop. He testified that there were three occupants in the car, including Sharper, who was in the rear passenger-side seat. Ball said that he patted down Sharper and did not find anything on him. However, when he searched the vehicle, he found a semi-automatic .38 caliber gun in the floorboard area of the rear passenger-side seat. Corporal Neil Johnson with the Commerce Police Department testified that he made the felony stop and confirmed that Sharper and Stephenson were two of the occupants of the car. He identified State's Exhibit 16B as the same gun found in the vehicle. He also testified that in his report on the felony stop, he stated that this gun was found under the driver's seat. Other witnesses established that this same gun discharged the bullet that killed Olivares.

The State then sought to introduce certified copies of two felony judgments against Sharper, one for robbery and one for unlawful possession of a firearm by a felon, resulting from the Commerce robbery. Sharper objected to their introduction, arguing that the prejudicial effect of the convictions substantially outweighed any probative value. Among the State's arguments was that admission of the convictions was necessary to prove that Sharper was the same person who committed the murder three weeks before the Commerce robbery, rebutting the defense's theory that another person had committed the

---

**6.** Olivares was shot at his residence around 11:00 p.m. on June 29, 2007. He was discovered by investigating officers lying on the floor with a single gunshot wound to his chest. Although there were four other occupants of the house, none of them witnessed the shooting.

murder.[7] In response, Sharper argued that since the State's evidence had already shown that the same gun used to murder Olivares was found three weeks later a in car occupied by Sharper and two others, all of that had already been tied together for the jury. The trial court expressed its opinion that the State had already established that the same gun was linked to the Commerce robbery and to the murder and sustained Sharper's objection.

Sharper argues on appeal that the trial court abused its discretion in admitting the evidence of an extraneous offense during the guilt/innocence phase of the trial. He limits his argument specifically to the testimony of Thornton regarding Sharper's robbery of "Boo." He primarily argues that the State failed to clearly prove that Sharper committed the Commerce robbery and that, therefore, the evidence was inadmissible, citing *Ransom v. State,* 503 S.W.2d 810, 813 (Tex.Crim.App.1974). Secondarily, he argues that there was nothing unique or distinctive in the evidence of the Commerce robbery to tie it to Sharper. The State argues, *inter alia,* that since Sharper convinced the trial court to exclude the certified judgments of his convictions resulting from the Commerce robbery, he cannot now complain on appeal that there was not sufficient evidence that he committed the robbery.[8] It also argues that evidence that the same gun was used in the Commerce robbery as in the murder satisfies the requirement that it be so unusual and distinctive as to

be like a signature, citing *Collazo v. State,* 623 S.W.2d 647, 648 (Tex.Crim.App. [Panel Op.] 1981). We find that (1) Sharper is estopped from asserting that the State failed to clearly prove he committed the Commerce robbery and (2) the trial court did not abuse its discretion in admitting evidence of the Commerce robbery to show identity and to rebut a defensive theory.

**B. Sharper Invited Error**

■■■ "The law of invited error provides that a party cannot take advantage of an error that it invited or caused, even if such error is fundamental." *Woodall v. State,* 336 S.W.3d 634, 644 (Tex.Crim.App. 2011) (citing *Prystash v. State,* 3 S.W.3d 522, 531 (Tex.Crim.App.1999) (en banc)); *Lamon v. State,* 463 S.W.3d 655, 658 (Tex. App.–Texarkana 2015, no pet.). "In other words, a party is estopped from seeking appellate relief based on error that it induced." *Woodall,* 336 S.W.3d at 644 (citing *Prystash,* 3 S.W.3d at 531); *Lamon,* 463 S.W.3d at 658. When a defendant induces the trial court to prevent the State from proving a necessary fact by sustaining his objections to the evidence, he is estopped from complaining of the State's lack of evidence. *See Vennus v. State,* 282 S.W.3d 70, 73–74 (Tex.Crim.App.2009) (defendant estopped from complaining of State's failure to prove articulable facts leading officer to believe there was contraband in his car when trial court erroneous-

---

**7.** Sharper had argued in his opening statement that a third person who had been identified as a suspect by police early in the case was more likely to have murdered Olivares. He continued this theory in his cross-examination of several State witnesses who testified before Thornton.

**8.** The State also argues that Sharper waived this argument by not objecting when Ball and Johnson testified that Sharper was involved in the Commerce robbery. However, the testi-

mony cited by the State only establishes that Sharper was a passenger in the car in which the murder weapon was found and that he was seated in the immediate vicinity of the murder weapon. We have carefully reviewed the testimony of Ball and Johnson and do not find any testimony establishing that Sharper participated in the Commerce robbery. Therefore, we find that Sharper has not waived this point of error.

ly sustained defendant's objections to officer's testimony). Rather, the appellate court will assume that the fact was proven. *See id.* at 73 (citing *Watenpaugh v. State Teacher's Retirement Sys.*, 51 Cal.2d 675, 336 P.2d 165, 168 (1959)).

■ In this case, the State sought to introduce the certified judgments of conviction of Sharper for robbery and unlawful possession of a firearm by felon, both of which resulted from the Commerce robbery, through its fingerprint expert. Sharper lodged the following objection:

[Counsel for Sharper]: All right. Your Honor, it is my understanding that Mr. Nix is being called by the State for the purpose of fingerprint comparison, in order to establish not—not one, but two prior convictions of my client.

I think at this point the court has—I mean, you know what you've allowed thus far and they now have the gun into evidence. You know, they've gotten what they need. And—so the—the need—in a balancing between the prejudicial affect [sic] and the need of the State to offer the evidence, their need has been satisfied and now we're at a point where their need has been satisfied. And they're wanting to put a cherry on top by introducing extraneous offenses of prior convictions in the guilt/innocence phase of this trial, which there—there is no—there is no justification for that, in the opinion of the defense, in light of what they've been permitted to introduce up to this point.

And now the prejudicial value is just going to totally outweigh it and we get into the situation where my client is no longer being tried for a specific offense, on a particular day. But he's being tried as a criminal in general. And so we—we ask the court at this point not to allow the jury to hear that—that testimony.

In response, the State argued that since Sharper, through his cross-examination, had challenged the credibility of the witness placing Sharper at the Commerce robbery and raised doubts as to the location of the gun in the car, the State needed the evidence of the convictions to meet its burden of proof so the jury could consider the extraneous-offense evidence. Sharper then responded:

[Counsel for Sharper]: . . . . The bottom line is, they, being the State, wanted to get into evidence, obviously, the .380. They have gotten the .380 into evidence. They have gotten into evidence that—that it was obtained at a time from a vehicle in which my client was present.

But there—and they have put on this witness—said, hey, the shell casing that the spent bullet that were found at the murder scene were from the same gun.

When the hearing on the admissibility of the judgments of conviction continued the following morning, the State contended that they were necessary to prove beyond a reasonable doubt that Sharper participated in the Commerce robbery, to show Sharper committed both crimes, and to rebut his defensive theory that another person committed the murder. Sharper responded:

[Counsel for Sharper]: Well, I think that which [the State] seeks to make known to the jury was made known to the jury yesterday, by the evidence that was put on and—and that evidence demonstrates that—that three and a half weeks later that my client and two others were stopped by the Commerce Police Department and were in possession of the same firearm that was used, according to the additional evidence of the tool mark examiner was the—would have been the same gun that was used in the offense in the present case. . . .

. . . .

And—and that—that the court still has an obligation to consider how far to go. It's not an all or nothing thing. You don't have to let in everything. And just because [the State] wants to jump to the conclusion, with regard to a robbery conviction and not waste a couple of days going through testimony about the events of this robbery in Commerce, Texas, that—I don't—I don't think that's the key element.

The key element is whether going—allowing him to go further with what he's gotten in is more—would be more prejudicial than probative. There was actually—there were actually statements made by the police officers that the purpose of the stop was information they had received with regard to a robbery. The stop was made for that purpose. There is a search. My client's in the car. The gun's in the car.

And then the gentleman from Tyler testified yesterday to tie that to this case. Our position is, they've been allowed to go far enough. Anything further would be unnecessarily prejudicial.

The trial court agreed with Sharper's analysis and excluded the evidence of the convictions, stating:

> THE COURT: .... I think you've got the gun linked to the robbery in Commerce and linked to the case in chief here.
>
> . . . .
>
> It appears to me that you've already made that link that you need. My concern is the extraneous offenses. They're also prejudicial. But I guess what I'm wrestling with in my mind is the fact—I think you made the link. I'm concerned this may be more prejudicial than probative.
>
> . . . .
>
> THE COURT: I'm going to go ahead and rule that it's not admissible.

This record shows that Sharper convinced the trial court that the evidence should be excluded because the State had already put on sufficient evidence to meet its burden of proof linking him to both the murder weapon and the Commerce robbery. Since Sharper induced the trial court to exclude the very evidence that would have proven his involvement in the Commerce robbery beyond a reasonable doubt, Sharper is estopped from complaining on appeal that the State failed in its proof. *See Vennus*, 282 S.W.3d at 73.

## C. The Trial Court Did Not Abuse Its Discretion

### 1. Standard of Review

We review a trial court's ruling on the admissibility of extraneous offenses under an abuse of discretion standard. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim.App.2009); *Hernandez v. State*, 351 S.W.3d 156, 160 (Tex.App.–Texarkana 2011, pet. ref'd); *Hartsfield v. State*, 305 S.W.3d 859, 870 (Tex.App.–Texarkana 2010, pet. ref'd). If the trial court's ruling is within the zone of reasonable disagreement, there is no abuse of discretion, and we uphold the trial court's ruling. *De La Paz*, 279 S.W.3d at 343–44; *Hernandez*, 351 S.W.3d at 160. "A trial court's ruling is generally within this zone [of reasonable disagreement] if the evidence shows that 1) an extraneous transaction is relevant to a material, [non-conformity] issue, and 2) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury." *De La Paz*, 279 S.W.3d at 344 (citing *Santellan v. State*, 939 S.W.2d 155, 169 (Tex.Crim.App.1997)). "Furthermore, the trial court's evidentiary ruling will not be disturbed if it is correct on any theory of law applicable to that ruling." *Fahrni v. State*, 473 S.W.3d 486,

492 (Tex.App.–Texarkana 2015, pet. filed) (citing *De La Paz*, 279 S.W.3d at 344); *Hernandez*, 351 S.W.3d at 160–61; *Duren v. State*, 87 S.W.3d 719, 728 (Tex.App.–Texarkana 2002, pet. struck)).

■ ▇▇ Evidence of extraneous crimes, wrongs, or acts is "not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." TEX. R. EVID. 404(b)(1). However, such evidence is admissible for other purposes, such as to prove identity, motive, or intent. TEX. R. EVID. 404(b)(2); *Montgomery v. State*, 810 S.W.2d 372, 387–88 (Tex.Crim.App.1991) (op. on reh'g). Whether extraneous-offense evidence has relevance other than for character conformity is a question for the trial court. *De La Paz*, 279 S.W.3d at 343.[9] "One of the main rationales for admitting extraneous-offense evidence is to prove the identity of the offender." *Segundo v. State*, 270 S.W.3d 79, 88 (Tex. Crim.App.2008) (citing *Castillo v. State*, 739 S.W.2d 280, 289 (Tex.Crim.App.1987)). A defendant may place identity in dispute by his opening statement, by his cross-examination, or by offering affirmative evidence. *Id.* at 86; *see Hartsfield*, 305 S.W.3d at 870.

▇▇ Sharper put identity in issue by asserting in his opening statement that another person, whom the police had identified as a suspect early in the case, was the more likely perpetrator of the murder. He continued this theme in his vigorous cross-examination of several of the State's witnesses by attacking the thoroughness of the police investigation of this other person. Thus, he promoted the defensive the-

ory that this other person, not he, committed the murder.

▇▇ After a defendant places his identity in issue, the State may "offer evidence of an extraneous offense to prove his identity if there [is] some distinguishing characteristic common to both the extraneous offense and the offense for which [the defendant is] on trial." *Hartsfield*, 305 S.W.3d at 871 (citing *Lewis v. State*, 674 S.W.2d 423, 425 (Tex.App.–Dallas 1984, pet. ref'd); *Ford v. State*, 484 S.W.2d 727, 729 (Tex.Crim.App.1972)). "Usually, it is the accretion of small, sometimes individually insignificant, details that marks each crime as the handiwork or *modus operandi* of a single individual." *Segundo*, 270 S.W.3d at 88; *Hartsfield*, 305 S.W.3d at 871–72. The common characteristics that may make the two crimes sufficiently similar "may be proximity in time and place, mode of commission of the crimes, the person's dress, or any other elements which mark both crimes as having been committed by the same person." *Segundo*, 270 S.W.3d at 88; *Hartsfield*, 305 S.W.3d at 872. Further, sometimes there may be one unique characteristic, or a single unusual fact that may suffice to establish identity. *Segundo*, 270 S.W.3d at 88; *see also Collazo v. State*, 623 S.W.2d 647, 648 (Tex.Crim.App.1981) (" '[M]uch more is demanded than the mere repeated commission of crimes of the same class, such as repeated burglaries or thefts. The device used must be so unusual and distinctive as to be like a signature.' " (quoting E. Cleary, *McCormick's Handbook of the Law of Evidence* 449 (2d ed.1972)).

Thornton testified that after the shooting of Olivares, Sharper and Stephenson

---

9. The trial court must also balance between the probative value of the evidence and the counter factors set out in Rule 403, although that balance is slanted toward the admission of otherwise relevant evidence. *De La Paz*, 279 S.W.3d at 343; *Montgomery*, 810 S.W.2d at 388; *see* TEX. R. EVID. 403. On appeal, Sharper does not assert any error under Rule 403.

returned to her house, Sharper had a gun, and Sharper told her that they had just shot someone and that they had done it because they needed money. Stephenson's statement showed that they had gone to Olivares' residence to rob him. Thornton went on to testify that on another occasion, Sharper told her that about three weeks after the shooting, he and Stephenson had robbed another person in Commerce using the same gun. She informed detectives four years later about these conversations and was able to direct the detectives to the location of the gun, since it had been retrieved by the officers investigating the Commerce robbery. The testimony of other witnesses established that the weapon retrieved by the officers investigating the Commerce robbery was the same weapon used to murder Olivares. Testimony also established that both Sharper and Stephenson were in the vehicle from which the gun was retrieved and that the vehicle was stopped late at night on a felony robbery stop. Finally, Ball testified that Sharper was seated in the rear passenger-side seat and that the gun was found in the floorboard area of the rear passenger-side seat.

"[T]he common distinguishing characteristic may be the proximity in time and place or the common mode of the commission of the offenses." *Ransom v. State*, 503 S.W.2d 810, 813 (Tex.Crim.App.1974) (citing *Ford*, 484 S.W.2d at 729). In *Ransom*, the Court of Criminal Appeals found sufficient similarities between the extraneous offense and the charged offense when both offenses were (1) robberies (2) committed at gunpoint (3) in Dallas (4) three days apart and when (5) the defendant was aided by a confederate. *Id.* Similarly, in this case, both offenses arose from (1) robberies (2) committed at gunpoint and (3) at night (4) in nearby communities only (5) three weeks apart and when (6) Sharper was aided by Stephenson. Further, the

very gun recovered in the immediate vicinity of Sharper during the investigation of the Commerce robbery was used to murder Olivares. Because there were sufficient similarities in the two offenses, the same gun was used in both offenses, and the evidence sufficiently linked the gun to Sharper, the trial court could reasonably find that the extraneous-offense evidence was relevant to the issue of identity as well as to rebut Sharper's defensive theory. For these reasons, we hold that the trial court did not abuse its discretion in admitting the extraneous-offense evidence. We overrule this point of error.

We affirm the judgment of the trial court.