

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

───────────────────────

No. 02-19-00023-CR

───────────────────────

RONALD WAYNE WARREN, Appellant

V.

THE STATE OF TEXAS

─────────────────────────────────────────────

On Appeal from the 396th District Court
Tarrant County, Texas
Trial Court No. 1526949D

─────────────────────────────────────────────

Before Sudderth, C.J.; Birdwell and Bassel, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

In two points, appellant Ronald Warren appeals his conviction for burglary of a habitation. *See* Tex. Penal Code Ann. § 30.02(c)(2). Appellant contends that the trial court abused its discretion by admitting evidence of an extraneous burglary in violation of Texas Rules of Evidence 403 and 404(b). Because we conclude that the complained-of evidence was admissible under rule 404(b) for purposes of resolving the issue of identity and that the rule 403 factors weigh in favor of admission, we hold that the trial court did not abuse its discretion. We therefore affirm.

### I.    Background

While at work on December 11, 2017, Colm McHugh received an alert on his phone that his security system had detected movement in his apartment. Not expecting any visitors, he opened the security application on his phone to watch and record the activity. He saw a man walking around his apartment taking property and putting it into one of McHugh's suitcases. Seeing this, McHugh triggered an alarm and then watched the man take his PlayStation before leaving.

McHugh called his apartment's property manager, April Lopez, and told her that someone had broken into his apartment. He then called 911 and left work, heading toward the complex. Lopez went to the area on the property where McHugh's apartment was located and noticed a tall male walking with a suitcase toward a Dodge SUV. Lopez parked her vehicle behind the SUV and confronted the man, asking him

if he lived at the property. The man told Lopez he was visiting someone who lived there and proceeded to put the suitcase in the SUV.

Lopez then went up to McHugh's apartment to verify whether it had been broken into. She testified that it appeared the apartment door had been forced open. Lopez returned to the parking lot, and the man she had spoken to was gone. But because Lopez's vehicle was parked behind the SUV, blocking it in, the SUV remained in the same spot.

When McHugh arrived at the apartment complex, he met with Lopez and a Fort Worth police officer near the SUV. He identified the suitcase and the clothing and electronics in it as his.

Later that day, Fort Worth Police received a report from appellant's wife Ashley Warren, who claimed that her Dodge SUV had been stolen. Based on the stolen vehicle report and the evidence gathered from the burglary of McHugh's apartment, Fort Worth Police conducted an investigation and identified the vehicle reported stolen by Ms. Warren as the same SUV that was left at McHugh's apartment complex.

The police then located photos on social media of Ms. Warren and appellant. The police compared the social media photos, a still image from McHugh's security footage, and a DPS photograph of appellant's driver's license, which convinced them that the burglar of McHugh's apartment was appellant. Based on appellant's alleged role in the burglary of McHugh's apartment, police obtained a warrant and arrested appellant in his driveway.

The police searched appellant's car and found money, electronics, jewelry, luggage, and a locked safe, some of which appellant claimed were his and his wife's. However, further investigation revealed many of the items were stolen in another burglary. Officer Tom Gierling was able to locate the owner of the stolen property, Stephen Ellis. Ellis confirmed that his apartment had been broken into. He then met Officer Gierling at the police department and identified several of the items found in the SUV as his and his roommate's. Appellant was indicted in Dallas County in connection with that burglary (the "Ellis burglary"), but that case was ultimately dismissed pursuant to the State's motion.

Appellant was also indicted for his role in the burglary of McHugh's apartment, which led to this appeal. At trial, the State sought to admit evidence of the extraneous Ellis burglary in order to establish appellant's identity as the man who burglarized McHugh's apartment. Appellant objected, arguing that the Ellis burglary evidence was impermissible character evidence under rule 404(b) and that the evidence would be far more prejudicial than probative under rule 403. The trial court overruled the objection but instructed the jury that it should consider the extraneous offense only for purposes of determining motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

At the conclusion of evidence, the jury found appellant guilty of burglary of a habitation. The trial court found a habitual-offender enhancement to be true and

4

sentenced appellant to thirty-five years' confinement. *See id.* § 12.42(d). This appeal followed.

## II. Admission of Evidence

In appellant's first point, he contends that the trial court abused its discretion in admitting evidence of the Ellis burglary because it was presented for the purpose of showing appellant's criminal character generally, in violation of rule 404(b).

In reviewing a trial court's determination of the admissibility of extraneous-offense evidence, we recognize the trial court's superior position to gauge the impact of the evidence and, accordingly, we will reverse "rarely and only after a clear abuse of discretion." *Lumsden v. State*, 564 S.W.3d 858, 877 (Tex. App.—Fort Worth 2018, pet. ref'd), *cert. denied*, 139 S. Ct. 2018 (2019). As long as the trial court's ruling is within the "zone of reasonable disagreement," there is no abuse of discretion, and the trial court's ruling will be upheld. *De La Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009) (quoting *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g)).

Rule 404(b) prohibits the introduction of extraneous bad acts to show character conformity but permits the introduction of such acts for other purposes, including proving identity. *Page v. State*, 137 S.W.3d 75, 78 (Tex. Crim. App. 2004). For proof of identity to be a valid purpose, it must be an issue in the case. *Id.*; *Price v. State*, 351 S.W.3d 148, 151 (Tex. App.—Fort Worth 2011, pet. ref'd). A defendant may place identity in dispute by his opening statement, by his cross-examination, or by offering affirmative evidence. *Sharper v. State*, 485 S.W.3d 612, 621 (Tex. App.—Texarkana 2016, pet. ref'd);

*see Dabney v. State*, 492 S.W.3d 309, 317 (Tex. Crim. App. 2016) (opening statement); *Page*, 137 S.W.3d at 78 (cross-examination).

Appellant does not dispute that identity was a prevailing issue in the case. Indeed, in his brief, he echoes the State in saying that identity was "the only contested issue in this case."

Still, the issue of identity in isolation does not automatically render extraneous offenses admissible. *Page v. State*, 213 S.W.3d 332, 336 (Tex. Crim. App. 2006). When the extraneous offense is introduced to prove identity by comparing common characteristics, it must be so similar to the charged offense that the offenses illustrate the defendant's distinctive and idiosyncratic manner of committing criminal acts. *Id.* "Usually, it is the accretion of small, sometimes individually insignificant, details that marks each crime as the handiwork or *modus operandi* of a single individual." *Segundo v. State*, 270 S.W.3d 79, 88 (Tex. Crim. App. 2008). No rigid rules dictate what constitutes sufficient similarities; rather, the common characteristics may be proximity in time and place, mode of commission of the crimes, the person's dress, or any other elements which mark both crimes as having been committed by the same person. *Id.* But if the similarities are "generic," i.e., typical to this type of crime, they cannot be said to bear the same "signature." *Id.* Sometimes, however, the "signature" is one unique characteristic. *Id.* For example, suppose that three bank robberies are committed over a four-year period in different cities in which the robber used an antique silver

crossbow. *Id.* This is the "mark of Zorro" mode of proving identity; it is a single, remarkably unusual fact which suffices to establish identity. *Id.*

*Ransom v. State* illustrates an instance when the threshold of similarity was met. There, the court held offenses to be sufficiently similar when both offenses were (1) robberies (2) committed at gunpoint (3) in Dallas (4) three days apart and when (5) the defendant was aided by a confederate. 503 S.W.2d 810, 813 (Tex. Crim. App. 1974). Similarly, in *Sharper*, the court held that an extraneous offense was sufficiently similar when both offenses were (1) robberies (2) committed at gunpoint (3) at night (4) in nearby communities (5) three weeks apart and (6) the defendant was aided by another. 485 S.W.3d at 622.

Turning to the present case, the evidence revealed multiple similarities between the two offenses. Both the charged and extraneous offenses were burglaries that occurred in apartment complexes; more specifically, the burglaries both occurred in top-floor apartments, which the investigating detective found to be "odd." Both took place in the same area of Dallas-Fort Worth during the daytime. In both, it appeared that no one was at home at the time. Both occurred within one month. In both offenses, the perpetrator forced open the front door and damaged the apartment's door frame. In both burglaries, the perpetrator stole not only high-value electronics, but also luggage and video games, and the perpetrator apparently used containers found in the burgled home to transport goods out of the home. In the McHugh burglary, the perpetrator was seen wearing a light-colored, long-sleeved, collared shirt; sunglasses; gloves; and a

7

light-colored baseball hat. When appellant was arrested following the Ellis burglary, he was wearing a light-colored, long-sleeved, collared shirt; a pair of sunglasses were in his front shirt pocket; he had a pair of gloves in his jeans pocket; and a light-colored baseball hat was in his car. Perhaps most importantly, the perpetrator in the McHugh burglary was captured on video wearing a highly distinctive pair of jeans with ribbing and a pattern of bleach marks down the thighs; when appellant was arrested following the Ellis burglary, he was wearing a seemingly identical pair of jeans. While the record contains no evidence on the prevalence of such clothing, we feel assured in the belief that jeans with bleach-splattered thigh-ribbing are not so common that appellant could have been easily mistaken for another assailant. *See Hill v. State*, No. 01-16-00595-CR, 2017 WL 2290201, at *5 (Tex. App.—Houston [1st Dist.] May 25, 2017, pet. ref'd) (mem. op., not designated for publication) (concluding that threshold similarity was shown in part because the perpetrator of both robberies wore the "same unique items of clothing," including neon green gloves); *Chaparro v. State*, 505 S.W.3d 111, 118 (Tex. App.—Amarillo 2016, no pet.) (relying in part on "distinctive Halloween masks" and a "letter jacket" to conclude there was sufficient similarity between robberies).

Rather, taking this unique trait alongside the many other parallels between the charged and extraneous offenses, we conclude that there was sufficient similarity for

the extraneous offense to be relevant to the issue of identity.[1] Because the extraneous offense was sufficiently similar to the charged offense and relevant to the issue of identity, the extraneous offense was admissible under rule 404(b). *See* Tex. R. Evid. 404(b)(2). We therefore overrule appellant's first point.

In appellant's second point, he contends that the trial court erred in allowing the State to present evidence of the extraneous offense because the prejudicial effect of the evidence greatly outweighed any probative value, and it is therefore inadmissible under rule 403.

In analyzing a rule 403 objection, the trial court must engage in a balancing process. *Perez v. State*, 562 S.W.3d 676, 689 (Tex. App.—Fort Worth 2018, pet. ref'd). When undertaking this analysis, on one end of the scales the court must weigh (1) the inherent probative force of the evidence along with (2) the State's need for the evidence. *Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006). On the other end, the court weighs (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main

---

[1]The trial court sua sponte instructed the jury that to consider the burglary, it had to find beyond a reasonable doubt that appellant committed that offense. On appeal, appellant contends that there was no evidence to show he committed the Ellis burglary. However, appellant never objected that the evidence was insufficient to permit the jury to conclude that he had committed the extraneous burglary. An argument of this sort concerning the admission of extraneous-offense evidence is subject to preservation requirements, and objections under rules 403 or 404 do not suffice to preserve such an argument. *Sanders v. State*, 422 S.W.3d 809, 815–16 (Tex. App.—Fort Worth 2014, pet. ref'd); *see Watkins v. State*, 946 S.W.2d 594, 600 (Tex. App.—Fort Worth 1997, pets. ref'd). This argument is therefore forfeited. *See* Tex. R. App. P. 33.1(a)(1).

issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Id.* at 641–42. Rule 403 carries a presumption that relevant evidence will generally be more probative than problematic. *Wells v. State*, 558 S.W.3d 661, 669 (Tex. App.—Fort Worth 2017, pet. ref'd). Thus, the balance is always slanted toward admission of relevant evidence. *De La Paz*, 279 S.W.3d at 343 & n.17. It was appellant's burden to overcome this presumption by demonstrating that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice or other factors. *Wells*, 558 S.W.3d at 669.

In looking at the first factor—the inherent probative force of the evidence—we must consider how compellingly evidence of the extraneous offense serves to make more or less probable a fact of consequence. *Lane v. State*, 933 S.W.2d 504, 520 (Tex. Crim. App. 1996). The strong similarities between the modes of commission of the extraneous and charged offenses and their temporal and geographic proximity to one another, coupled with the fact that appellant was in possession of proceeds of the extraneous offense when arrested and lied about being the owner, offer persuasive circumstantial evidence that appellant was the perpetrator in both offenses. *See id.* (reasoning that "[g]iven the striking similarities" between the offenses, the extraneous offense was "highly" probative on the issue of identity). Thus, the first factor weighs heavily in favor of the State.

As to the second factor, the State had a relatively strong need for this evidence. In evaluating this factor, we consider (1) whether the proponent has other available evidence to establish the fact of consequence that the evidence is relevant to show, (2) the strength of the other evidence, and (3) whether the fact of consequence is related to an issue that is in dispute. *Erazo v. State*, 144 S.W.3d 487, 495–96 (Tex. Crim. App. 2004). Here, the State's sole eyewitness to the charged offense was unable to identify appellant in a photo lineup or in open court due to appellant's failure to appear on the first day of trial. The State's only other evidence available to establish appellant's identity as the burglar was a single unclear photo from McHugh's security footage and the circumstance that his wife's vehicle was found at the apartment complex. Clearly, identity was a principal issue in this case. Taking all of this in to account, we are persuaded that the State had a considerable need to admit the complained-of evidence in order to establish the identity of the perpetrator. The second factor also weighs heavily in favor of the State.

As to the third factor, the evidence in question had limited potential to cause unfair prejudice. Unfair prejudice may be created by the tendency of the evidence to prove some adverse fact not properly in issue or to unfairly excite emotions against the defendant. *Montgomery*, 810 S.W.2d at 378. In this case, both the extraneous and charged offenses were the same crime, committed in a very similar manner. The extraneous burglary was, therefore, "no more serious than the allegations forming the basis for the indictment." *Caston v. State*, 549 S.W.3d 601, 613 (Tex. App.—Houston [1st Dist.] 2017,

11

no pet.) (quoting *Robisheaux v. State*, 483 S.W.3d 205, 220 (Tex. App.—Austin 2016, pet. ref'd)). Admittedly, making the jury aware that appellant committed more than one burglary may have sparked temptation to convict him on the basis of his criminal character generally. *See Morales v. State*, 293 S.W.3d 901, 912 (Tex. App.—Texarkana 2009, pet. ref'd). However, the trial court instructed the jury to consider the extraneous-offense evidence only for certain purposes, including identity. We must presume that the jury understood and followed this instruction, as there has been no evidence presented to suggest otherwise. *See Crenshaw v. State*, 378 S.W.3d 460, 467 (Tex. Crim. App. 2012). This limiting instruction reduced the possibility that the extraneous offense would sway the jury in an improper direction. *See Fowler v. State*, 553 S.W.3d 576, 585 (Tex. App.—Texarkana 2018, no pet.) (concluding that limiting instruction mitigated the possible prejudice from extraneous burglary offense). Thus, this factor weighs only slightly in favor of appellant.

The remaining factors add no weight to the scales. As to the fourth and fifth factors, we do not perceive any way in which the evidence would have confused or distracted the jury, and the evidence was not of a scientific or technical character, such that it might have been given undue weight by an untrained jury. *See Gigliobianco*, 210 S.W.3d at 641. Finally, as to the sixth factor, the trial court could have reasonably concluded that the presentation of the evidence in question would not consume an inordinate amount of time. *See id.* at 641–42. In fact, testimony concerning the Ellis burglary comprised far less than one-fifth of the testimony in the State's case in chief

(21 record pages out of 170 total pages for the State's case). We do not believe that this amount of time was excessive. *See Lane*, 933 S.W.2d at 520 (determining that the extraneous offense testimony was not excessive when it constituted less than one-fifth of the State's case in chief). These factors weigh neutrally.

Two factors weigh in favor of admission, both of them heavily so. Only one factor weighs slightly against admission. We therefore conclude that the trial court did not exceed the "considerable freedom" it is afforded in exercising its discretion under rule 403. *See Montgomery*, 810 S.W.2d at 378. We overrule appellant's second point.

### III.   Conclusion

Having overruled both of appellant's points, we affirm the judgment of the trial court.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  August 29, 2019

13