Opinion on Remand by Justice Moseley
Jamel McLelland Fowler was convicted by a Hunt County jury of theft of a Kawasaki mule all-terrain vehicle (the ATV) valued at $1,500.00 or more, but less than $20,000.00, and was sentenced to two years' incarceration. On appeal,[1] Fowler *579 originally raised three points of error. He challenged the sufficiency of the evidence supporting his conviction, asserted error in the admission of extraneous-offense evidence, and claimed reversible error in the trial court's admission of an unauthenticated video-recorded exhibit into evidence.
This Court found that there was sufficient evidence to support Fowler's conviction, but agreed that the trial court erred when it admitted the video exhibit, and determined that his conviction should be reversed. The Texas Court of Criminal Appeals reversed our ruling and remanded the matter to us with instructions that we were to address Fowler's second issue.[2] In his second issue, Fowler asserts that the trial court erred by admitting evidence of extraneous offenses from Collin County, which he claims were not linked to him, were not relevant, were unfairly prejudicial, and misled the jury.
I. Background
The State returned three indictments in Hunt County against Fowler arising out of a series of burglaries and thefts in and around the Royse City area.[3] The State tried all three cases together. The indictment in this case charged Fowler with stealing the ATV from Paul Blassingame. In our prior opinion in this case, we set forth the evidence relevant to this appeal:
Blassingame testified that the ATV had been located on property he owned in Hunt County, which he visited often. In November 2014, he went to that property, where he discovered that the ATV was missing, a fact that he duly reported to the Hunt County Sheriff's Office as a theft. Law enforcement officers in Royse City of neighboring Rockwall County found the ATV on December 6, 2014, while investigating a burglary at a concrete supply business. The ATV was identified by its vehicle identification number and returned to Blassingame.
The ATV was found hidden in a wooded area beyond a field on property owned by Lattimore Materials,[5] a ready-mix concrete business that had suffered a series of burglaries over the months preceding the discovery of the ATV. While investigating one of the burglaries that occurred at Lattimore Materials in December 2014, Royse City policemen noticed tire tracks (which they believed were made by an ATV) which led from the building that had been burglarized to a tree line; just beyond the tree line was the copse of trees in which the ATV was hidden. There was trash scattered on the ground around the ATV, among which was a receipt from a Family Dollar store that included the time and date of its issuance. Further, within fifteen feet or so of the ATV, the policemen found packaging in which a box cutter had been located, and a box cutter was one of the items listed on the Family Dollar store receipt. Royse City Police Officer Jaime Torrez took the receipt to the store that had issued it and was able to view the store's surveillance video *580 recording showing what appeared to be the purchase memorialized by the receipt. The store was unable to duplicate the recording or render it to a format Torrez could take with him, so he and an officer he was training used Torrez' department-issued camera to record the surveillance footage as it played on the store's video monitor. The footage's date and time information corresponded generally to the date on the receipt. Particularly of note to the State's case, the recording showed a man entering the store then completing a purchase, and it was the State's theory at trial that that man was Fowler.
In addition to those circumstances, in the weeks leading up to the December discovery of Blassingame's ATV, officers had found a blue Nissan Xterra vehicle in the area under suspicious circumstances. On November 3, 2014, at about 1:45 a.m., Royse City Police Sergeant Ryan Curtis and Rockwall County Deputy Brad Dick found the truck parked on a dirt road behind some industrial businesses in a poorly lit area.[6] Virginia Cox (eventually named as a co-defendant with Fowler in one or more of his indictments) was sitting in the Xterra. Cox's explanation to the law enforcement officers of her whereabouts was that she and her boyfriend had run out of gasoline and that he had gone back to a gas station for fuel. Because one of the businesses (Four Brothers, a mower and tractor dealer) behind which Cox's vehicle was parked had been the victim of multiple burglaries in the past, Curtis was suspicious of Cox. Curtis saw several sets of bolt cutters in the Xterra[7] and got another police officer to go to the nearest gas station. That officer encountered no one purporting to be in search of gasoline for a stalled vehicle. When Curtis asked Cox to attempt to start the vehicle, it started with no problem (thereby casting doubt on Cox's story that it had no fuel).
At about 6:00 a.m. that same day, Royse City Police Officers William Potter and Tim West observed the same blue Xterra in another part of Royse City parked on the side of a local county road. As previously, the vehicle was occupied only by Cox, and when she was questioned by the policemen, she made reference once again to a male companion. Later that morning, Potter and West again encountered the Xterra, this time containing both Cox and Fowler. Between these two encounters, Potter had responded to a call regarding an alleged theft at the Four Brothers mower and tractor dealership. The dealership representatives called Potter's attention to three mowers, each of which had their gasoline caps removed and none of which held any gasoline in their tanks.[8]
After that, Potter returned to the Xterra and questioned Fowler about involvement in any theft of gasoline, which Fowler denied. From our reading of the record, Potter took no further action with respect to Fowler after that point.[9] There was another encounter between West and Potter, on the one hand, and Fowler and Cox, on the other, on either November 3 or 10 wherein Fowler allowed the officers to look inside the Xterra. At that time, the officers noticed that there were three bolt cutters, binoculars, and a pry bar inside the vehicle.[4 ] When questioned about those items, Fowler attempted to explain the presence of the tools in his vehicle by *581 saying he was an electrician. That explanation failed to quell West's suspicions of Fowler because (as West explained) he ran a construction company and was aware of the tools and equipment used by electricians, and those items would not ordinarily be used by electricians.[10] This encounter occurred near Lattimore Materials, which had suffered multiple recent burglaries.
Testimony about the burglaries at Lattimore Materials revealed that a part of the method of operation of the burglars was to sever cables or heavy wires and remove them from the site. In addition, the burglars had cut padlocks on the gates of the premises more than once. While investigating one of the burglaries, Torrez found three sets of bolt cutters near some of the cut cables, and he suspected that the bolt cutters had been used to cut the cables.[5 ]
[5] At the time of the burglaries, the Lattimore Materials facility located on the subject property was non-operational. Duane Wetteland, the area manager for Lattimore Materials, described other facilities owned by the company and explained that business needs determined whether the facility on the property at issue was operational or not. Wetteland testified that he periodically checked on the facility when it was non-operational.
[6] Curtis described the area where the Xterra was parked as "a dirt road that you really can't even travel through." He continued, "I mean, I'm unaware of any vehicles being able to travel through it for years."
[7] The issue of consent to the search of the vehicle was not challenged by Fowler at trial or in this appeal.
[8] Potter actually said the gas cans were empty; from the context, he likely was referring to the mowers' tanks, but he never testified that anyone at Four Brothers told him there had been gas in the tanks the night before. Nonetheless, Potter did testify that he was responding to a report of stolen gasoline, and he left the dealership telling "management that [he] had a suspect and that [he] was going to go back and talk with them."
[9] A recording of that encounter, recorded via the dash camera of Potter's police car, was admitted into evidence. There was much discussion and argument over the recording. The exhibit provided to this Court has several files; there are three video recordings, each less than thirty seconds in duration, which contain no audio. The final file is an audio/video recording that is two minutes and twenty-eight seconds in duration which captured Potter asking Fowler about any involvement in theft of gasoline from Four Brothers. Potter suggested during this exchange that the business had surveillance videos. When Fowler stated that he was done talking with the officer, the video ended. From the discussions at the bench by the parties and the trial court, it appears that this audio/video recording was played for the jury.
[10] Fowler's objection to this testimony was sustained, but he did not request an instruction to disregard.
Fowler v. State , 517 S.W.3d 167, 170-72 (Tex. App.-Texarkana 2017), rev'd , 544 S.W.3d 844 (Tex. Crim. App. 2018).
II. Standard of Review
We review a trial court's ruling on the admissibility of extraneous offenses under an abuse of discretion standard.
*582 De La Paz v. State , 279 S.W.3d 336, 343 (Tex. Crim. App. 2009) ; Williams v. State , No 05-14-00567-CV, 2015 WL 4931447, at *4 (Tex. App.-Dallas Aug. 18, 2015, pet. ref'd) (mem. op., not designated for publication);[6] Hernandez v. State , 351 S.W.3d 156, 160 (Tex. App.-Texarkana 2011, pet. ref'd). We will not reverse the trial court unless a clear abuse of discretion is shown. Zuliani v. State , 97 S.W.3d 589, 595 (Tex. Crim. App. 2003). If the trial court's decision is within the zone of reasonable disagreement, the trial court has not abused its discretion, and we will uphold the trial court's ruling. De La Paz , 279 S.W.3d at 343-44 ; Williams , 2015 WL 4931447, at *4 ; Hernandez , 351. S.W.3d at 160. A trial court's ruling that admits extraneous acts is generally within the zone of reasonable disagreement if the evidence shows that "1) an extraneous transaction is relevant to a material, non-propensity issue, and 2) the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury." De La Paz , 279 S.W.3d at 344. Furthermore, the trial court's evidentiary ruling will not be disturbed if it is correct on any theory of law applicable to that ruling. Id. ; Williams , 2015 WL 4931447, at *4 ; Hernandez , 351 S.W.3d at 160-61.
III. Analysis
In his second issue, Fowler complains that the trial court erred by admitting evidence of extraneous offenses from Collin County, which he claims were not linked to him, were not relevant, were unfairly prejudicial, and misled the jury. Fowler complains of the trial court's admission of other instances of theft and burglary at Lattimore Materials and of an alleged theft of gasoline.[7]
A. The Lattimore Materials Burglaries
Rule 404(b) allows the admission of evidence of other crimes, wrongs, or acts for purposes other than to "prove the character of a person in order to show action in conformity therewith." TEX. R. EVID. 404(b) ; Montgomery v. State , 810 S.W.2d 372, 387-88 (Tex. Crim. App. 1990) (op. on reh'g). Whether extraneous-offense evidence has relevance other than for character conformity is a question for the trial court. De La Paz , 279 S.W.3d at 343. The trial court must also balance between the probative value of the evidence and the counter factors set out in Rule 403, although that balance is slanted toward the admission of otherwise relevant evidence. Id. ; Montgomery , 810 S.W.2d at 388 ; see TEX. R. EVID. 403.
At a hearing before trial, the trial court made a preliminary ruling that it would allow the introduction of testimony regarding other burglaries at Lattimore Materials occurring in November and December 2014, based on the State's representation that it would put on evidence that linked Fowler to the ATV, which was found near the back of Lattimore Materials' property on December 5, 2014. See TEX. R. EVID. 104(b). At the hearing, the State noted that the other burglaries occurred during the time frame between when the ATV was stolen and its recovery, that the November burglaries occurred during the time when Fowler's Xterra was parked *583 near Lattimore Materials, and that bolt cutters were used in the Lattimore Materials burglaries. The State argued that the evidence was necessary to establish identity since the Family Dollar video recording showed a man who generally (but not definitely) looked like Fowler. It also argued that the evidence was necessary to give the jury the reason why the discovery of the ATV on the Lattimore Materials property led them to suspect Fowler.
"[I]t has long been the rule in this State that the jury is entitled to know all the relevant surrounding facts and circumstances of the charged offense; an offense is not tried in a vacuum." Moreno v. State , 721 S.W.2d 295, 301 (Tex. Crim. App. 1986) (citing Archer v. State , 607 S.W.2d 539 (Tex. Crim. App. [Panel Op.] 1981), abrogated on other grounds by Wilson v. State , 977 S.W.2d 379 (Tex. Crim. App. 1998) ). Consequently, same-transaction contextual evidence is admissible under Rule 404(b)"when the offense would make little or no sense without also bringing in that evidence," and "only to the extent that it is necessary to the jury's understanding of the offense." Devoe v. State , 354 S.W.3d 457, 469 (Tex. Crim. App. 2011) (quoting Wyatt v. State , 23 S.W.3d 18, 25 (Tex. Crim. App. 2000) ). Same-transaction contextual evidence "imparts to the trier of fact information essential to understanding the context and circumstances of events which, although legally separate offenses, are blended or interwoven." Camacho v. State , 864 S.W.2d 524, 532 (Tex. Crim. App. 1993) (citing Mayes v. State , 816 S.W.2d 79, 86 (Tex. Crim. App. 1991) ).
Before evidence of the burglaries was admitted at trial, testimony regarding police encounters with Fowler was introduced. As noted above, on November 3, Officers Curtis and Dick found a blue Xterra, which was ultimately determined to belong to Fowler, parked on a dirt road behind Lattimore Materials at 1:30 in the morning. Several sets of bolt cutters were seen in the automobile. The explanation that she and her boyfriend ran out of gas, given by the occupant, Cox, was apparently untrue. Later that morning, the same Xterra was found by officers parked on the side of another road, this time occupied by both Fowler and Cox. When questioned about why he had multiple bolt cutters and other items, Fowler said that he was an electrician, which the officers found suspect. West also testified that on November 10, he once again encountered Fowler in his Xterra while West was on his way to Lattimore Materials to respond to a reported burglary.[8]
Testimony regarding the Lattimore Materials burglaries showed that the police investigated burglaries at Lattimore Materials on November 6, November 10, December 1, and December 5, 2014. The November 6 burglary involved the cutting of some heavy cables and the discovery of three sets of bolt cutters, which were introduced into evidence. Testimony regarding the November 10 burglary showed that someone had removed the cables found cut on November 6, that a padlock had been cut, and that several other items were missing. On December 1, the two buildings that had been burglarized in November had once again been broken into, and more wire was missing. On December 5, a padlock on one of the buildings had been cut, an ice machine had been taken, and four-wheeler tracks were found that led to the recovery of the ATV in some woods near *584 the back of Lattimore Materials' property and in the vicinity of a county road.
In this case, the trial court could have concluded that the Lattimore Materials burglaries were inextricably interwoven with the theft of the ATV. The State maintained that the several encounters by police officers seeing Fowler with bolt cutters in near proximity to Lattimore Materials, contemporaneously with the November burglaries that involved the use of bolt cutters, linked Fowler to these burglaries.[9] The State also took the position that repeated burglaries of the same buildings within a recent time frame indicated that they were committed by the same culprit or culprits and the nature of the items taken in the burglaries explained why an ATV was needed to transport the items to the county road where they could be picked up, thus providing a motive for the theft of the ATV. The presence of the ATV in some woods near Lattimore Materials, and its connection to Fowler, would have been much more difficult to explain without referring to the series of burglaries at Lattimore Materials. Based on this record, we find that it was within the zone of reasonable disagreement for the trial court to admit the evidence as same-transaction contextual evidence. Williams , 2015 WL 4931447, at *5. Thus, we find that this extraneous evidence was relevant to a material, non-conformity issue. De La Paz , 279 S.W.3d at 344.[10]
Nevertheless, to be admissible, the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury. Id. In considering this balancing test, courts consider:
(1) how compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable-a factor which is related to the strength of the evidence presented by the proponent to show the defendant in fact committed the extraneous offense;
(2) the potential the other offense evidence has to impress the jury "in some irrational but nevertheless indelible way[";]
(3) the time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense; and
(4) the force of the proponent's need for this evidence to prove a fact of consequence, i.e. , does the proponent have other probative evidence available to him to help establish this fact, and is this fact related to an issue in dispute.
Id. at 348-49 (citing Wyatt , 23 S.W.3d at 26 ). In this case, the only other evidence linking Fowler to the theft of the ATV was the Family Dollar video recording linked to the time and date printed on the receipt found near the recovered ATV. However, although the recording shows a man with similar features to Fowler's entering the *585 store and purchasing the items listed on the receipt, nobody at trial testified that it was definitely Fowler. Thus, the evidence of extraneous burglaries at Lattimore Materials was necessary to aid the jury in determining whether the man shown in the recording was Fowler. Further, the extraneous evidence consisted of crimes similar to the one for which Fowler was indicted, not some more heinous crime. These circumstances reduce the potential that the jury would be impressed in some irrational manner. This potential was further diminished by the trial court's limiting instructions that required the jury to only consider the extraneous-acts evidence if it found beyond a reasonable doubt that Fowler committed the acts, and then only as evidence of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Finally, the amount of time necessary to develop the extraneous-acts evidence was not inordinately lengthy in this case, especially considering that it was necessary to present the jury with relevant facts and circumstances surrounding the theft of the ATV. Consequently, we conclude that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury. See id. at 344.
Fowler also complains that the trial court erred when it admitted testimony by Potter of the alleged theft of gasoline from Four Brothers on November 3. The only objection to this testimony made at trial was that it was not relevant or material. Therefore, we will only consider this ground on appeal.[11] We review a trial court's decision to admit or exclude evidence for an abuse of discretion. Martinez v. State , 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). Abuse of discretion occurs only if the decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." Taylor v. State , 268 S.W.3d 571, 579 (Tex. Crim. App. 2008) ; Montgomery , 810 S.W.2d at 391. We may not substitute our own decision for that of the trial court. Moses v. State , 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). We will uphold an evidentiary ruling if it was correct on any theory of law applicable to the case. De La Paz , 279 S.W.3d at 344.
Evidence may be relevant, and admissible, when the defendant has opened the door to the admission of such evidence. Monkhouse v. State , 861 S.W.2d 473, 476 (Tex. App.-Texarkana 1993, no pet.) (citing Beasley v. State , 838 S.W.2d 695 (Tex. App.-Dallas 1992, pet. ref'd) ). The defendant can open the door to the admission of evidence by leaving a false impression through his cross-examination of the State's witnesses. Green v. State , No. 06-17-00090-CR, 2018 WL 911139, at *3 (Tex. App.-Texarkana Feb. 16, 2018, no pet.) (mem. op., not designated for publication) (citing Powell v. State , 63 S.W.3d 435, 438-39 (Tex. Crim. App. 2001) ); Monkhouse , 861 S.W.2d at 476.
In this case, before the complained-of testimony, Fowler cross-examined Curtis regarding his investigation of Fowler's vehicle being parked near Four Brothers at 1:30 a.m. on November 3:
Q. .... You went to Four Brothers, didn't find anything there, correct?
A. That is correct.
The State argued, and the trial court agreed, that this left the false impression with the jury that there had been no *586 crimes committed around Four Brothers on that date. Although Fowler's questioning of Curtis was subject to other interpretation, we cannot say that the trial court was outside the zone of reasonable disagreement when it found that Potter's testimony was relevant and admissible. See Taylor , 268 S.W.3d at 579.
For the reasons stated, we overrule Fowler's second issue.
We affirm the trial court's judgment.

Originally appealed to the Fifth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. See Tex. Gov't Code Ann. § 73.001 (West 2013). We are unaware of any conflict between precedent of the Fifth Court of Appeals and that of this Court on any relevant issue. See Tex. R. App. P. 41.3.

In doing so, it appears that the Texas Court of Criminal Appeals has lowered the standard for admissibility of some of the evidence which may be proffered at trial. See Fowler v. State , 544 S.W.3d 844, 849-50 (Tex. Crim. App. 2018).

Testimony was presented regarding other burglaries which occurred in Royse City, Texas. Royse City is located partly within Rockwall County, Collin County, and Hunt County. Because some of the burglaries occurred outside Hunt County, they were not the subject of the present Hunt County prosecution.

An audio/video recording from West's dash camera of this encounter was admitted into evidence and shown to the jury. On the recording, Potter removes two of the bolt cutters and displays them for the camera.

This investigation occurred on November 6, 2014. The three bolt cutters seized by Torrez were introduced into evidence.

Although unpublished opinions have no precedential value, we may take guidance from them "as an aid in developing reasoning that may be employed." Carrillo v. State , 98 S.W.3d 789, 794 (Tex. App.-Amarillo 2003, pet. ref'd).

Although Fowler also complains of the trial court's admission of evidence of his possession of a trailer that bore stolen license plates, that evidence was excluded by the trial court.

On appeal, Fowler does not challenge the admission of the testimony regarding these encounters with the police.

The trial court could have determined that the jury could reasonably find beyond a reasonable doubt that Fowler committed the Lattimore Materials burglaries by comparing the bolt cutters found in Fowler's Xterra on November 3, as shown in the recording from the dash camera with the bolt cutters found at Lattimore Materials, and conclude that they were the same bolt cutters. See Fischer v. State , 268 S.W.3d 552, 556 (Tex. Crim. App. 2008) (before admitting extraneous-act evidence, under Rule 104(b) the trial court must make a determination that a jury could reasonably find beyond a reasonable doubt that the defendant committed the extraneous act.).

As we discuss in the following paragraphs, the evidence of the Lattimore Materials burglaries was also relevant to the issue of identity. See Tex. R. Evid. 404(b) (providing that extraneous-acts evidence may be admissible to prove, inter alia , identity).

On appeal, Fowler also complains that the trial court erred under Rules 403 and 404(b) of the Texas Rules of Evidence. However, "to preserve a complaint for appellate review.... the point of error on appeal must comport with the objection made at trial." Yazdchi v. State , 428 S.W.3d 831, 844 (Tex. Crim. App. 2014).