**AFFIRMED; Opinion Filed January 15, 2020**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-18-01303-CR**

**No. 05-18-01304-CR**

**JIMMY LAPAUL ANDERSON, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 439th Judicial District Court**
**Rockwall County, Texas**
**Trial Court Cause Nos. 2-17-0345, 2-17-0346**

## MEMORANDUM OPINION
Before Justices Whitehill, Schenck, and Richter[1]
Opinion by Justice Whitehill

A jury found appellant guilty of aggravated kidnapping and aggravated robbery, and the trial judge sentenced him to life in prison in both cases. In three issues, appellant argues that the trial court erred by denying his challenges for cause as to two jurors and by admitting extraneous offense evidence.

We conclude that the trial court did not abuse its discretion by denying appellant's challenges for cause because the record supports the trial judge's determination that the jurors were not disqualified for bias and prejudice. We further conclude that admitting the extraneous offense

---

[1] The Hon. Martin Richter, Justice, Assigned

evidence was not error because it was admissible to show identity and its probative value was not substantially outweighed by its prejudice. Accordingly, we affirm the trial court's judgments.

## I. BACKGROUND

One evening, two people robbed Skylar Suydam at gunpoint in a Walmart parking lot. A man and a woman approached her outside her car and asked for money. Suydam said she did not have any money and tried to get in her car. The robbers told her not to get in the car and that they had a gun. Suydam tried to make her voice loud to attract attention, and the female pulled Suydam to the ground by her hair. The man unlocked the car door.

Suydam was on her knees and was pushed into the car. But she unlocked the passenger side door, rolled out of the car, and escaped. She then ran to the first person she saw in the parking lot.

The female assailant, Saniqua Perkins, was arrested first and testified for the State at trial. Perkins testified about the planning and execution of this offense and another offense that occurred at a Murphy's gas station the day before.

## II. ANALYSIS

**A.    Issues One and Two: Did the trial court abuse its discretion by denying appellant's challenges for cause to jurors Brown and Romney based on their prior relationships with Suydam and her grandparents, respectively?**

No, there is evidence from which the trial court could have concluded that these jurors did not have a bias or prejudice that would substantially impair their ability to fulfill their oaths.

### 1.    Standard of Review and Applicable Law

A prospective juror may be challenged for cause if he or she has a bias or prejudice against the defendant or against the law upon which either the State or the defense is entitled to rely. TEX. CODE CRIM. PROC. art. 35.16(a)(9), (c)(2). The test is whether that juror's bias or prejudice would

substantially impair the individual's ability to carry out juror duties in accordance with the instructions and oath. *Buntion v. State*, 482 S.W.3d 58, 84 (Tex. Crim. App. 2016).

To establish the challenge for cause's propriety, the proponent must show that the venireperson understood the law's requirements and could not overcome his or her prejudice well enough to follow the law. *Gonzales v. State*, 353 S.W.3d 826, 832 (Tex. Crim. App. 2011). Before a trial court may excuse a venireperson for cause on this ground, the court must explain the law to the venireperson, and inquire whether the venireperson can follow that law, regardless of the individual's personal views. *Id.*

Bias exists as a matter of law when a juror admits that he is biased. *Anderson v. State*, 633 S.W.2d 851, 854 (Tex. Crim. App. 1982). But if bias or prejudice is not established as a matter of law, the trial court has discretion to determine whether bias or prejudice exists to such a degree that the juror is disqualified. *Id.* If bias is not established as a matter of law, the trial court's ruling is reviewed in light of the juror's answers. *Cardenas v. State*, 325 S.W.3d 179, 185 n.24 (Tex. Crim. App. 2010) (citing *Williams v. State*, 773 S.W.2d 525, 537 (Tex. Crim. App. 1988)).

We thus review the trial court's overruling of a challenge for cause under an abuse of discretion standard. *Buntion*, 482 S.W.3d at 84. We examine the prospective juror's voir dire as a whole to determine whether the record demonstrates that the prospective juror's convictions would interfere with his or her ability to serve as a juror and to follow the oath. *Id.* In conducting this review, we afford great deference to the trial court's ruling "because the trial judge is present to observe the demeanor of prospective jurors and listen to tones of voice." *Id.*

### 2. Juror Brown

After jury selection, Brown told the court that, at the time of the incident, he lived across the street from Suydam and that her mother told him about the robbery shortly after it happened. Specifically, Suydam's mother told him that the robbery had been at Wal-Mart and they found the

Honda Accord Suydam had been driving.  Suydam and her family later moved away and were no longer his neighbors.

When the judge asked if Brown could set aside that limited conversation about the case and decide the case based on what he heard in the courtroom, Brown replied "Yes, I never knew who - - whodunit . . . no names or anything other than it happened . . . I just didn't want them seeing me here.  They all know me."

The judge then asked, "can you be open for everything and hold the State to its burden of proof?"  Brown said, "I don't have any problem with it."  Then the judge asked if Brown would be able to find the defendant not guilty knowing that he might have to later face Suydam, her family, and Brown said "Yeah, I wouldn't have any problem."

The exchange concluded with:

**THE COURT**: I want to be very clear.  You can base this case on what you hear in this courtroom and forget, just the same as if you had read about it in the newspaper or you heard about it on TV, you could still be a juror on the case.

What the law tells me is, you have to disregard what you were told up to this point and decide what you -- based upon what you hear and see in this open court.  Does that make sense?

**BROWN**: Uh-huh.

**THE COURT**: And you are telling this Court, you can do that or you would have a difficulty doing it?

**BROWN**: No, I can do it.

Based on this record, we reject appellant's argument that Brown should have been struck because he "expressed bias in favor of the complainant."  As the trial court's inquiry shows, Brown had only a tangential acquaintance with Suydam's mother because Suydam's family lived across the street from him when the crime was committed.  And "the mere fact that a juror knows, or is a neighbor, or an intimate acquaintance of, and on friendly relations with, one of the parties to a suit

–4–

is not sufficient basis for disqualification." *Anderson v. State*, 633 S.W.2d 851, 853 (Tex. Crim. App. [Panel Op.] 1982).

Here, Brown's knowledge of the case was limited to the general fact that a crime had occurred and the vehicle was recovered; he had no specific details about the crime or who allegedly committed it. Significantly, Brown assured the court that he could be fair and impartial. And the trial judge is the sole judge of testifying jurors' credibility. *See Salazar v. State*, 38 S.W.3d 141, 148 (Tex. Crim. App. 2001). Under these circumstances, we cannot conclude that the trial court erred in concluding that Brown lacked bias or prejudice requiring disqualification. *See* TEX. CODE CRIM. PROC. art. 35.16(a)(9), (c)(2).

### 3. Juror Romney

Juror Romney, the other challenged juror, said that Suydam's grandparents attended his church, but he had never met Suydam. Romney is a lay clergy bishop in the church, and he counseled Suydam's grandparents "maybe two times" about how to help Suydam cope after the offense. He had no further contact with the grandparents after that. And the only thing he knew about the offense was "high level," that is, that there had been an attempted abduction in the Wal-Mart parking lot.

The judge asked Romney if he could do his job and find the defendant not guilty if he believed the defendant was not guilty or that the State did not meet its burden of proof. Romney replied, "I believe that the defendant who is on trial deserves an impartial and fair process . . . And I am committed to that over and beyond any kind of sentiment or emotional outcome that might be of other participants, yes."

Then the following happened:

> **JUDGE**: . . . it's close to you. We're all back there discussing it, but you don't believe an element is proved, whatever it is, okay, or several aren't proved, whatever the case may be, but everyone else does and they are trying to talk you into it. You are going to keep out the fact that you have to face in the future, like

–5–

you said, at some point or another, you would probably come across the victim's family, and that's going to stay out of your decision-making process. And I understand it's an uncomfortable situation that you're going to have to face.

**ROMNEY**: But I feel like I can balance that and not let it -- I believe in a person's right to a fair trial, and I believe that he is our priority at this juncture.

Based on the foregoing, we reject appellant's argument that Romney should have been disqualified based on bias. Romney's statements that he would not let his church-related acquaintance with Suydam's grandparents affect his decision in the case supports the trial court's ruling. We thus resolve appellant's first two issues against him.

**B.      Issue Three:   Was extraneous offense evidence erroneously admitted?**

No, the challenged evidence was admissible to prove identity, and the trial court could have reasonably concluded that the evidence's probative value was not substantially outweighed by its prejudice.

**1.      Standard of Review and Applicable Law**

Evidence of extraneous offenses is not admissible during a trial's guilt phase to prove that a defendant committed the charged offense in conformity with a bad character, but it may be admissible if it has relevance apart from character conformity, such as when it provides proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, or when evidence of multiple crimes are connected such that full proof of any one of them cannot be given without evidence of the others. *See* TEX. R. EVID. 404(b); *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011).

Evidence may also be excluded under Rule 403 if the "probative value [of the evidence] is substantially outweighed by the danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403. In analyzing a rule 403 objection, the trial court must engage in a balancing process. *Perez v. State*, 562 S.W.3d 676, 689 (Tex. App.—Fort Worth 2018, pet. ref'd). When undertaking

this analysis, on one end of the scales the court must weigh (i) the inherent probative force of the evidence along with (ii) the State's need for the evidence. *Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006). On the other end, the court weighs (iii) any tendency of the evidence to suggest a decision on an improper basis, (iv) any tendency of the evidence to confuse or distract the jury from the main issues, (v) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (vi) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Id*. at 641–42.

Rule 403 favors admitting relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Hayes v. State*, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002). Thus, the balance is always slanted toward admission of relevant evidence. *De La Paz v. State*, 279 S.W.3d 336, 343 & n.17 (Tex. Crim. App. 2009). It was appellant's burden to overcome this presumption by demonstrating that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice or other factors. *See Wells v. State*, 558 S.W.3d 661, 669 (Tex. App.—Fort Worth 2017, pet. ref'd).

We review a trial court's ruling on the admissibility of extraneous offense evidence under an abuse of discretion standard. *Devoe*, 354 S.W.3d at 469. We must affirm if the trial court's ruling was within the "zone of reasonable disagreement." *Id*. A trial court generally does not abuse its discretion in admitting extraneous offense evidence if such evidence was "relevant to a material, non-propensity issue." *Id.* We will affirm if the trial court' ruling was correct on any theory of law applicable to the case. *Id*

### 2. The Extraneous Evidence

#### (a) Rule 404(b)

Appellant complains that the trial court erroneously allowed evidence concerning two extraneous offenses—one concerning a robbery at E-Z Mart and the other regarding a robbery at a Murphy's gas station. According to appellant, he objected and was granted a running objection as to both. The record reflects, however, that appellant's counsel objected to evidence concerning only the E-Z Mart robbery. And the trial court said, "I'm allowing a running objection to go to each witness as to the July 30th incident at the E-Z Mart."

We have not found an objection to the Murphy's robbery evidence. Indeed, appellant introduced this evidence during cross-examination and the evidence does not implicate appellant. Specifically, appellant's counsel questioned appellant's accomplice Saniqua Perkins about the Murphy's incident in an effort to attack her credibility. When he did so, the State objected that the evidence was not relevant, was not a prior conviction, and did not involve appellant. The State's objection was overruled, and appellant fails to explain how evidence he elicited concerning a robbery that he was not involved in is "more prejudicial than probative" as to him. Moreover, the invited error doctrine forecloses appellant's complaint about the Murphy's evidence. *See Prystash v. State*, 3 S.W.3d 522, 531 (Tex. Crim. App. 1999) (law of invited error estops a party from making an appellate error of action it induced). We thus limit our consideration to the E-Z Mart robbery evidence.

Identity was an issue in the case because Suydam could not identify anyone in a lineup. In opening statement, appellant's counsel told the jury that his client was not involved and Perkins was not credible. Likewise, during closing arguments, appellant's counsel told the jury "[t]his case is about identity and motive."

Because appellant's identity was a central issue in the case, the State introduced Perkins's testimony about the E-Z Mart robbery in which Perkins, appellant, and an individual named Eric Jones were involved. That robbery occurred the day before the Wal-Mart robbery. Perkins said that appellant was wearing a T-shirt over his head to cover his face during the E-Z Mart robbery. The t-shirt was later recovered in Perkins's car and testing included appellant as a contributor to the DNA on the shirt.

Perkins also testified that the E-Z Mart robbery and the Wal-Mart robbery were conducted the same way. Jones drove Perkins's car, Perkins asked the victims for money, and appellant pointed his gun at the victims and took the money. Perkins identified appellant in open court and also identified his gun as the one that was used in both robberies.

Accordingly, we conclude that the trial court did not abuse its discretion by denying appellant's Rule 404(b) objection.

### (b). Rule 403

Considering the first Rule 403 factor—the evidence's inherent probative force—we must consider how compellingly evidence of the extraneous offense serves to make more or less probable a fact of consequence. *Lane v. State*, 933 S.W.2d 504, 520 (Tex. Crim. App. 1996). The strong similarities between the charged and extraneous offense's mode of commission offers persuasive circumstantial evidence that appellant committed the charged offense. *See id.* ("[g]iven the striking similarities" between the offenses, the extraneous offense was "highly" probative on the issue of identity); *see also Sharper v. State*, 485 S.W.3d 612, 622 (Tex. App.—Texarkana 2016, no pet.) (extraneous offense admissible when identity at issue and there is some distinguishing characteristic common to both the extraneous offense and the charged offense). Thus, the first factor weigh heavily in favor of the State.

And the State had a strong need for this evidence. The victim was unable to identify appellant, and identity was a principal issue in the case. The second factor also weighs heavily in favor of the State.

As to the third factor, the evidence in question had limited potential to cause unfair prejudice. Unfair prejudice may be created by the tendency of the evidence to prove some adverse fact not properly in issue or to unfairly excite emotions against the defendant. *Montgomery v. State*, 810 S.W.2d 372, 378 (Tex. Crim. App. 1991). Here, both the extraneous and charged offenses were committed in a very similar manner. The extraneous robbery was, therefore, "no more serious than the allegations forming the basis for the indictment." *Caston v. State*, 549 S.W.3d 601, 613 (Tex. App.—Houston [1st Dist.] 2017, no pet.).

Although making the jury aware that appellant committed more than one robbery might spark temptation to convict him on the basis of his criminal character generally, *see Morales v. State*, 293 S.W.3d 901, 912 (Tex. App.—Texarkana 2009, pet. ref'd), the trial court instructed the jury to consider the extraneous-offense evidence only for the purpose of identity[2]. We must presume that the jury understood and followed this instruction as there is no evidence suggesting otherwise. *See Crenshaw v. State*, 378 S.W.3d 460, 467 (Tex. Crim. App. 2012). This limiting instruction reduced the possibility that the extraneous offense would sway the jury in an improper direction. *See Fowler v. State,* 553 S.W.3d 576, 585 (Tex. App.—Texarkana 2018, no pet.) (concluding that limiting instruction mitigated the possible prejudice from extraneous burglary offense). Thus, this factor weighs only slightly in favor of appellant.

---

[2] Specifically, the jury was instructed that: " . . . if there is any testimony before you in this case regarding the defendant's having committed offenses, wrongs or acts, other than the offense alleged against him in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offenses, wrongs or acts, if any were committed, and even then you may only consider the same in determining the identity of the defendant, if any, in connection with the offense, if any, alleged against him in the indictment in this case, and for no other purpose."

The remaining factors add no weight to the scales. As to the fourth and fifth factors, we do not perceive any way in which the evidence would have confused or distracted the jury, and the evidence was not of a scientific or technical character, such that it might have been given undue weight by an untrained jury. *See Gigliobianco*, 210 S.W.3d at 641. Finally, as to the sixth factor, the trial court could have reasonably concluded that the presentation of the evidence in question would not consume an inordinate amount of time. *See id*. at 641–42.

Two factors weigh in favor of admission, both of them heavily so. Only one factor weighs slightly against admission.

We therefore conclude that the trial court did not abuse its discretion when it determined that the extraneous offense evidence was relevant to the material, non-propensity issue of identity and that any prejudicial effect was not outweighed by its probative value. Appellant's third issue is resolved against him.

### III. CONCLUSION

Having resolved all of appellant's issues against him, we affirm the trial court's judgment.

/Bill Whitehill/
BILL WHITEHILL
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
181303F.U05

–11–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JIMMY LAPAUL ANDERSON, Appellant

No. 05-18-01303-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 439th Judicial District Court, Rockwall County, Texas
Trial Court Cause No. 2-17-0345.
Opinion delivered by Justice Whitehill.
Justices Schenck and Richter participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 15th day of January, 2020.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JIMMY LAPAUL ANDERSON, Appellant

No. 05-18-01304-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 439th Judicial District Court, Rockwall County, Texas
Trial Court Cause No. 2-17-0346.
Opinion delivered by Justice Whitehill.
Justices Schenck and Richter participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 15th day of January, 2020.