

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-23-00224-CR

LEE GONZALEZ, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 76th District Court
Titus County, Texas
Trial Court No. CR20950

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

MEMORANDUM OPINION

A Titus County jury convicted Lee Gonzalez of burglary of a habitation. *See* TEX. PENAL CODE ANN. § 30.02(c)(2). After Gonzalez pled true to the State's punishment-enhancement allegations, the jury assessed a sentence of fifty years' imprisonment. On appeal, Gonzalez (1) challenges the sufficiency of the evidence supporting his conviction and (2) argues that the trial court erred by allowing the State to mention a pending investigation involving him.

We find that legally sufficient evidence supports the jury's verdict of guilt. We also find no abuse of discretion in the trial court's evidentiary ruling related to the pending investigation. As a result, we affirm the trial court's judgment.

## I.      Sufficient Evidence Supports the Jury's Verdict of Guilt

### A.      The Evidence at Trial

The record established that Ellen Minn[1] was home alone on May 25, 2021, when three construction workers arrived, giving her "an uneasy feeling." Ellen called her mother, Allison, who knew that the construction workers were there to repair the home's roof. Even so, because Ellen was uncomfortable alone, Allison picked her up and took her to her workplace.

Allison testified that she returned home with Ellen around 4:30 or 5:00 p.m. to find that the home had been robbed. Allison said her bedroom window was broken and the door frame and metal front door were "smashed in and . . . beat up pretty bad." According to Ellen and Allison, the house had been ransacked and left "in shambles." Ellen testified that her jewelry, iPad, shoes, and other items were stolen from her room. Allison, who said that no one had

---

[1]Ellen was a child at the time of the offense. To protect her identity, we will use a pseudonym for her and her mother. *See* TEX. R. APP. P. 9.10.

permission to be in the home in her absence, testified that a .380 mm Ruger, a .9mm Ruger, an "SKS" rifle, and a .300 "Winchester Mag" were missing. Allison noticed an unusual green and white face mask bearing the word "Dallas" that was left on her bed. She called the police and told them that the face mask did not belong to anyone who lived there.

Wayne Minor, an investigator sergeant with the Titus County Sheriff's Department, spoke with Allison about the missing firearms and recorded their serial numbers. Carrie Kirkland, a corporal with the Titus County Sheriff's Department at the time of this incident, testified that she collected from the Minn household the green and white "wrestling mask[]" with the word "Dallas." She also noticed that the mask had a blood stain on it. The jury saw photographic evidence of the forced entry and the condition of the looted home.

Minor sent a photo of the distinctive mask to Chris Durant, III, the criminal investigations sergeant at the Mount Pleasant Police Department. Durant responded by sending Minor a surveillance video recording taken in connection with another investigation depicting someone wearing the mask while standing next to a person Minor personally knew. Minor testified that, from Durant's video, he was able to develop Gonzalez as a suspect and, on May 27, narrowed his whereabouts to a local Motel 6.

Minor testified that he obtained video surveillance footage from the Motel 6 and confirmed that Gonzalez had checked into the hotel on the same day as the robbery.[2] The high-quality video footage, played for the jury, showed Gonzalez and Santa Guadalupe Lozado, who Minor knew, removing several pieces of luggage and other items from a Dodge truck into a

---

[2]Durant testified that Gonzalez used his brother's name to rent the motel room but that Gonzalez's brother was in jail at that time.

motel room, along with another man identified as Luis Arietta. The surveillance footage also showed Gonzalez holding something long with a blanket wrapped around it.

Minor testified that officers made lawful entry into the motel room where Gonzalez was staying. According to Minor, Gonzalez was present in the room when Minor noticed the SKS in plain view, along with the .380 mm Ruger, shoes, jewelry, and other items stolen from the Minn home. Minor confirmed that the serial numbers on the weapons recovered from Gonzalez's room matched the serial numbers of the guns owned by Allison. He also learned that Gonzalez's father lived seventy-five yards from the Minn's house, which Minor testified was "a clear line of sight" away. As a result, officers arrested Gonzalez and charged him with burglary of a habitation. The jury saw photos of the items recovered from Gonzalez's room.

Allison testified that officers informed her that they had recovered her stolen belongings. The State showed photos of the goods recovered from Gonzalez's Motel 6 room to Ellen, who identified several items as belonging to her. Ellen also identified her mother's iPad, shoes, a knife, two firearms, and LED lights that were stolen from her parents' room. The Minns recovered most of their stolen items.

After Gonzalez's arrest, the Titus County Sheriff's Department sent the face mask to the Texas Department of Public Safety Crime Laboratory, where Erika Avila, a forensic scientist, compared DNA evidence obtained from the mask to buccal swabs obtained from Gonzalez and Lozado. According to Avila, DNA evidence from the mask revealed a mixture of two

4

individuals, of which Lozado and Gonzales were possible contributors.[3]  Avila then tested the blood stain found on the face mask, excluded Lozado as a contributor to the blood, and concluded that Gonzalez was a possible contributor to the blood stain.[4]

After hearing this evidence, the jury found Gonzalez guilty of burglary of a habitation.

### B.        Standard of Review

"In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt." *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd)).  "Our rigorous [legal sufficiency] review focuses on the quality of the evidence presented." *Id.* (citing *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring)).  "We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury 'to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)

---

[3]Avila testified that "[t]he probability of obtaining the mixture profile [from the face mask] if the DNA came from Santa Guadalupe Lozado and an unrelated unknown individual [wa]s 62.7 septillion times greater than the probability of obtaining the profile if the DNA came from two unrelated unknown individuals."  She also said that "[t]he probability of obtaining this mixture profile if the DNA came from Lee Gonzale[z] and an unrelated unknown individual [wa]s 31.1 quadrillion times greater than the probability of obtaining the profile if the DNA came from two unrelated unknown individuals."

[4]Avila testified, with respect to the blood stain, "The probability of obtaining this mixture profile if the DNA came from Lee Gonzale[z] and an unrelated unknown individual is 238 sextillion times greater than . . . the probability of obtaining this profile if the DNA came from two unrelated unknown individuals."

5

(citing *Jackson*, 443 U.S. at 318–19; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007))).

"Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge." *Id.* at 298 (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "The 'hypothetically correct' jury charge is 'one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240).

Here, the State alleged that Gonzalez, "with intent to commit theft, intentionally or knowingly enter[ed] a habitation, without the effective consent of [Allison Minn], the owner thereof."

### C.    Analysis

Gonzalez concedes that Minn's home was burglarized and challenges only the element of identity by arguing that insufficient evidence established that he committed the offense.

"[T]he State may prove the defendant's identity and criminal culpability by either direct or circumstantial evidence, coupled with all reasonable inferences from that evidence." *Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009). Further, it is a "well-settled rule that a defendant's unexplained possession of property recently stolen in a burglary permits an inference that the defendant is the one who committed the burglary." *Rollerson v. State*, 227 S.W.3d 718, 725 (Tex. Crim. App. 2007); *see Poncio v. State*, 185 S.W.3d 904, 905 (Tex. Crim. App. 2006).

6

Here, we find that ample evidence supported the jury's verdict of guilt. The jury heard that Gonzalez's father lived seventy-five yards from, and had a clear line of sight to, the Minn's house. Officers found a distinct green and white face mask left at the scene of the crime, and Avila testified that Gonzalez was a likely contributor to the DNA evidence found on the mask. The jury saw surveillance footage showing Gonzalez moving bags of luggage and an elongated item covered by a blanket into a Motel 6 room on the day of the burglary. In light of the footage, the jury was free to infer that the elongated item was a rifle that Gonzalez covered with a blanket. Critically, officers found the Minn's stolen items in Gonzalez's motel room while he was present, and there was no explanation for how Gonzalez came into possession of the stolen goods.

We find that the evidence, when viewed in the light most favorable to the verdict, is legally sufficient to support the jury's verdict that Gonzalez burglarized the Minn's home. As a result, we overrule Gonzalez's first point of error.

## II.     The Trial Court's Ruling to Permit a Reference to a Pending Investigation Was Not an Abuse of Discretion

In his second point of error, Gonzalez argues that the trial court erred by allowing the State to question Durant about a pending investigation.

## A.     Procedural Background

Outside of the jury's presence, the State informed the trial court that it wished "to ask questions about how Detective Durant connected the mask to Lee Gonzale[z]."  After Gonzalez objected to this line of questioning based on Rules 404 and 403,[5] the State responded,

> It's contextual.  I mean, this is how they got to him.  This is very important to the whole basis of how we get to him as a suspect.  If it weren't for Chris Durant recognizing the mask and knowing that it had been used in a burglary that was only two weeks prior, then he would not have known that it was connected to Lee Gonzale[z].

After the trial court confirmed that the State would not offer any evidence about the extraneous offense, would not reveal that the extraneous event was another burglary, and would only say that Gonzalez was connected to the case without clarifying his connection, the trial court overruled the objection and permitted the State to introduce the evidence.[6]  As a result, Durant testified that he recognized the mask from "video footage from another incident that the Mount Pleasant [Police Department] had an active case on" and identified Gonzalez as "a suspect that was connected with that mask."

---

[5]"Rule 404(b) allows the admission of evidence of other crimes, wrongs, or acts for purposes other than to 'prove the character of a person in order to show action in conformity therewith.'"  *Fowler v. State*, 553 S.W.3d 576, 582 (Tex. App.—Texarkana 2018, no pet.) (quoting TEX. R. EVID. 404(b)).  "The trial court must also balance between the probative value of the evidence and the counter factors set out in Rule 403, although that balance is slanted toward the admission of otherwise relevant evidence."  *Id.*

[6]The State characterizes the trial court's ruling as preliminary and argues that Gonzalez failed to preserve error because he did not object to Durant's testimony.  However, "[w]hen the court hears a party's objections outside the presence of the jury and rules that the evidence is admissible, a party need not renew an objection to preserve a claim of error for appeal."  TEX. R. EVID. 103(b).  Here, because the trial court made an express ruling admitting the evidence following a hearing outside of the jury's presence, we find the issue preserved.  *See Smith v. State*, 424 S.W.3d 588, 593 (Tex. App.—Texarkana 2013, no pet.) (citing *Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003); *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003)).

**B.      Standard of Review**

"We review a trial court's decision to admit or exclude evidence for an abuse of discretion." *Flowers v. State*, 438 S.W.3d 96, 103 (Tex. App.—Texarkana 2014, pet. ref'd) (citing *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010)).  "Abuse of discretion occurs only if the decision is 'so clearly wrong as to lie outside the zone within which reasonable people might disagree.'"  *Id.* (quoting *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008) (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g)). "We may not substitute our own decision for that of the trial court."  *Id.* (citing *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003)).  "We will uphold an evidentiary ruling if it was correct on any theory of law applicable to the case."  *Id.* (citing *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009)).

**C.      Analysis**

We have previously written,

> A trial court's ruling that admits extraneous acts is generally within the zone of reasonable disagreement if the evidence shows that "1) an extraneous transaction is relevant to a material, non-propensity issue, and 2) the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury."

*Fowler*, 553 S.W.3d at 582 (quoting *De La Paz*, 279 S.W.3d at 344).

Under Rule 404(b), evidence of an extraneous offense is admissible to prove identity. TEX. R. EVID. 404(b)(2).[7]  The State did not introduce evidence of the nature of any extraneous

---

[7]"In addition . . . , extraneous-offense evidence may be admissible as contextual evidence."  *Aguillen v. State*, 534 S.W.3d 701, 712 (Tex. App.—Texarkana 2017, no pet.) (citing *Mayes v. State*, 816 S.W.2d 79, 86 (Tex. Crim. App. 1991)).

offense, but merely established that Durant recognized the mask from the surveillance footage obtained from a pending investigation and was able to develop Gonzalez as a suspect in this case.[8] Because this evidence was admitted for the purpose of establishing Gonzalez's identity as a perpetrator of the Minn burglary, we conclude that the trial court did not abuse its discretion by overruling Gonzalez's Rule 404 objection.

Next, "[t]he trial court must also balance between the probative value of the evidence and the counter factors set out in Rule 403, although that balance is slanted toward the admission of otherwise relevant evidence." *Fowler*, 553 S.W.3d at 582 (citing *De La Paz*, 279 S.W.3d at 343). "[T]o be admissible, the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury." *Id.* at 584. In conducting a Rule 403 balancing test, we consider the following:

> (1)     how compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable . . . ;
>
> (2)     the potential the other offense evidence has to impress the jury "in some irrational but nevertheless indelible way[";]
>
> (3)     the time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense; and
>
> (4)     the force of the proponent's need for this evidence to prove a fact of consequence, *i.e.*, does the proponent have other probative evidence available to him to help establish this fact, and is this fact related to an issue in dispute.

*Id.* (alteration in original) (quoting *De La Paz*, 279 S.W.3d at 349).

---

[8]Although Durant did not accuse Gonzalez of committing the extraneous offense, his testimony could have left an impression that Gonzalez was a suspect in the extraneous offense. Accordingly, affording Gonzalez the benefit of the doubt, we will conduct a full extraneous-offense analysis instead of concluding that no extraneous-offense evidence was admitted.

We "must review the trial court's ruling in light of what was before the trial court at the time the ruling was made." *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). Durant's testimony that he was able to connect Gonzalez to the mask after watching the footage from the other investigation was strong evidence of the element of identity, which favored admission. Given that the State refrained from mentioning what the extraneous offense was and, instead, focused on how officers came to find Gonzalez as a suspect in this case, we do not conclude that Durant's testimony impressed the jury in some irrational but impressionable manner. Further, Durant's testimony took hardly any time to develop and, because no evidence had been introduced connecting Gonzalez to the Minn burglary at the time of the trial court's ruling, the trial court could have found that the State had a strong need for the evidence.

After balancing the Rule 403 factors, we cannot conclude that the trial court abused its discretion by admitting Durant's testimony. Consequently, we overrule Gonzalez's last point of error.

## III. Conclusion

We affirm the trial court's judgment.

Charles van Cleef
Justice

Date Submitted:     May 31, 2024
Date Decided:       June 3, 2024

Do Not Publish

11